## Richmond

LLOYD H. BURTON v. CHARLES B. OLDFIELD, ADMINISTRATOR OF THE ESTATE OF CARL KEVAN HEGLMEIER, DECEASED.

January 25, 1954.

Record No. 4162.

Present, Eggleston, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Rixey & Rixey,* for the plaintiff in error.

*Pender, Coward & Boswell,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This case, here for the second time, arises out of an automobile collision which occurred on December 10, 1950, between 1:30 and 2:00 a. m., in Princess Anne county on Route 58, running approximately east and west between Norfolk and Virginia Beach. At the point of the collision the highway is straight for more than a mile and the main road is divided into two traffic lanes, each 24 feet wide, separated by a grass plot. Beyond the shoulder on either side of the main highway is a paved parallel service road.

While a disabled 1940 Ford sedan was being pushed westwardly along the main highway by Carl Kevan Heglmeier and three other young men it was run into in the rear by a 1950 Buick sedan driven in the same direction by Lloyd H. Burton. Heglmeier was killed almost instantly in the collision and Charles B. Oldfield, his administrator, brought this action against Burton, alleging that the collision was due to the latter's negligence.

At the first trial there was a verdict and judgment of $8,500 in favor of the administrator. On the former appeal

we reversed the judgment and remanded the case for a new trial because of the error of the lower court in submitting to the jury whether the defendant had the last clear chance to avoid the collision. We held that the case should have been submitted on the simple issues of whether the defendant was guilty of negligence which was the proximate cause of the collision, and if so, whether the plaintiff's decedent was guilty of contributory negligence. *Burton* v. *Oldfield, Adm'r.*, 194 Va. 43, 47, 72 S. E. (2d) 357, 360.

The second trial resulted in a verdict and judgment of $11,500 in favor of the plaintiff administrator, and on the present appeal the defendant challenges (1) the sufficiency of the evidence to sustain the verdict, (2) the admission of certain evidence, and (3) the rulings of the trial court in granting and refusing certain instructions.

Since the evidence on the second trial is substantially the same as that adduced on the first trial and summarized in the former opinion, it need not be again related in detail. The evidence on behalf of the plaintiff shows that just before the collision the Ford sedan, occupied by five· sailors on leave from the U. S. S. *Franklin D. Roosevelt* and proceeding westwardly along the highway, stalled because of an overheating engine. Four of the occupants, including Heglmeier, got out and began pushing the car while Michael Rectenwald, the owner, sat behind the wheel and steered with the purpose of either getting the motor started or reaching the nearest service station. They had been pushing the car some fifteen minutes and had gone about one-fourth of a mile when the collision occurred. There is evidence that a misty rain was falling and that the visibility was poor.

The further evidence on behalf of the plaintiff is that the car was being pushed along the right-hand edge of the pavement of the westbound lane of the main highway and that its headlights and left taillight were burning. The right taillight had been broken. Heglmeier was pushing on the left side of the car while the three other young men were at the rear of the vehicle, but not covering or concealing the rear

light. The westbound Buick car, proceeding at a rapid speed, after skidding approximately 60 feet, ran into the left rear of the Ford car, crossed the medial grass plot, and traveled 534 feet before coming to a stop in the eastbound lane on the opposite side of the road. The impact carried the Ford car 15 feet along the road and Heglmeier's body was thrown 66 feet beyond this. Just before the impact Karl W. Reeb, who was pushing on the right rear of the Ford car, saw the lights of the approaching Buick car and with a cry of warning to his companions jumped to the right and escaped injury. He estimated the speed of the on-coming car at 90 miles per hour.

The defendant, Burton, testified that he was driving westwardly along the right-hand side of the main road at from 50 to 55 miles per hour when he suddenly saw about 100 feet in front of him, near the center of the road, an unlighted vehicle with a number of people in dark clothes at its rear; that he immediately applied his brakes and tried to avoid a collision by turning to his left, but that his effort was unsuccessful and the right front of his car struck the left rear of the Ford. After being "sideswiped" by the impact his car went across the middle grass plot.

Mrs. Burton, who was sitting on the front seat beside her husband, and Sidney W. Mason, a passenger in the rear seat of the car, corroborated Burton's testimony as to the speed of their car and the fact that the Ford car was being pushed along the center or middle of the westbound lane without showing its rear light.

A State trooper who arrived on the scene shortly after the collision testified that there were marks on the pavement which indicated that the Ford car was traveling along the center of the westbound lane at the time of the impact.

Thus, as we said in the former opinion, it was for the jury to say from this conflicting evidence how the collision occurred, and whether the defendant, in view of the poor visibility and surrounding conditions, was driving at an unreasonable speed, and whether by the exercise of ordinary care

in keeping a reasonable lookout he should have seen the car ahead and its attendants in time to have avoided the collision.

Similarly it was for the jury to say whether the plaintiff's decedent was guilty of contributory negligence, or, as the defendant says, assumed the risk, in the manner in which he and his companions were pushing the vehicle along the road, and in not sooner observing the on-coming car of the defendant, and in not removing himself from a position of danger.

The jury has resolved these issues in favor of the plaintiff's decedent and unless there is some error in the proceedings its verdict is binding on us, as it was on the trial court.

The main assignment of error is to the action of the trial court in permitting the plaintiff to introduce and read in evidence the testimony of Michael Rectenwald and Harry L. Converse, given at the previous trial. At the time of the collision Rectenwald was seated in the Ford car behind the wheel, as has been said, and Converse was pushing the car at the left rear end.

About five weeks before the date set for the second trial the plaintiff filed a petition in the court below, alleging that at the time of the accident and of the first trial Rectenwald and Converse were in the United States Navy and attached to the U. S. S. *Franklin D. Roosevelt*; that since the first trial counsel for the plaintiff had been advised by the United States Bureau of Naval Personnel that both had been discharged from the service; that a letter recently addressed to Rectenwald at the home address which he had listed with the Bureau, asking his cooperation in giving a deposition to be read at the second trial, had not been answered; and that a letter of similar import directed to Converse at "Wahkon, Mississippi," the home address which he had listed with the Bureau, had been returned with the notation stamped on the envelope, "No such office in the State." The prayer of the petition was, in substance, that since these witnesses would not be available to testify at the second trial, the plaintiff

might be permitted to offer in evidence the transcript of their testimony given at the previous trial.

A copy of the petition having been served on counsel for the defendant, he objected to the proposed reading of the transcript of the testimony of the two witnesses, stating that in lieu thereof their depositions should be taken and that he would not oppose a continuance for a reasonable time for that purpose. Upon consideration of the petition and supporting documents the trial court ruled that the plaintiff would be allowed to read at the second trial the transcript of the testimony of the two witnesses, and this was done over the objection of counsel for the defendant.

"The mere fact that testimony has been given in the course of a former proceeding between the parties to a case on trial is no ground for its admission in evidence. The witness himself, if available, must be produced the same as if he were testifying de novo. His testimony given at a former trial is mere hearsay. * * *

"The law recognizes, however, that it is sometimes impossible to produce a witness who has testified at a former trial, as where the witness dies or becomes insane before the later trial, is out of the jurisdiction, or is kept away from the trial by the opposite party. In such cases, where the second action is between the same parties or their privies and involves the same issues, the testimony of the witness as taken at the former hearing or trial is, according to practically all decisions, admissible in the later one as one of the exceptions to the rule excluding hearsay testimony. Such testimony is not open to the objections ordinarily urged against hearsay, because it has been delivered under the sanction of an oath and subject to the right of the adverse party to cross-examine the witness giving it. It is admitted on the principle that it is the best of which the case admits. * * * " 20 Am. Jur., Evidence, § 686, pp. 578, 579. See also, 31 C. J. S., Evidence, § 384, pp. 1187, 1188; Greenleaf on Evidence, 16th Ed. § 163 ff., p. 276 ff.

"In order to establish a right to introduce testimony of a witness given at a former trial, it is incumbent upon the pro-

ponent of such evidence to lay a proper predicate for its introduction by showing the unavailability of the witness who gave the testimony sought to be produced. In other words, the burden of satisfying the court of the validity of the excuse for nonproduction of witness lies upon the party seeking to introduce the testimony given by him at the former trial. It must be shown either that the witness is dead, insane, or beyond the jurisdiction of the court or on diligent inquiry cannot be found or that some other circumstance exists which shows that the witness who gave the testimony at the former trial cannot be produced as witness on the second trial. * * * " 20 Am. Jur., Evidence, § 698, p. 587.

Moreover, we have held that the absence of a witness from the State is not in itself sufficient to warrant the proof of his testimony given at a former trial, but the party offering such evidence must show "to the satisfaction of the court that he could not, by the use of reasonable diligence, have procured the deposition of the absent witness." *Wise Terminal Co.* v. *McCormick*, 107 Va. 376, 380, 58 S. E. 584. See also, *Director General of Railroads* v. *Gordon*, 134 Va. 381, 390, 391, 114 S. E. 668.

The substance of the defendant's argument here is that the evidence should have been excluded because, it is said, there was no showing that the plaintiff had exercised reasonable diligence to locate these witnesses and take their depositions.

We agree that the efforts of the plaintiff do not measure up to a high degree of diligence, but it is well settled that the sufficiency of the proof to establish the unavailability of a witness is largely within the discretion of the trial court, and, in the absence of a showing that such discretion has been abused, will not be interfered with on appeal. 20 Am. Jur., Evidence, § 698, p. 588; 31 C. J. S., Evidence, § 391, p. 1199. Here the trial court was satisfied as to the sufficiency of the proof and there is nothing in the record to indicate an abuse of its discretion.

Moreover, there is no showing that the defendant was in

any manner prejudiced by the trial court's ruling. The issues in the two trials were the same. The witnesses had been examined and cross-examined under oath at the first trial, and their knowledge and recollection of the circumstances of the collision had been fully developed, by the same counsel who represented the opposing parties at the second trial. There is nothing to indicate that the defendant was in any way prejudiced by the reading of the testimony of the witnesses taken at the first trial rather than the reading of their depositions which, of course, would have had to be taken before the second trial.

The defendant argues that his position might have been bettered by a cross-examination of the witnesses beyond what appears in the record of their testimony taken at the first trial. But there is nothing in the record to indicate that he made such claim in the trial court. If he had desired to take the depositions of the witnesses and examine them further, he should have so notified the trial court, sought a continuance, and located the witnesses for that purpose.

Error is assigned to the granting of Instruction P-6 which reads thus: "The law requires the operator of an automobile who suffers a mechanical breakdown to remove the car from the highway as soon as possible and the term highway includes the hard surfaced paved portion and the shoulders as well. In other words, if you believe from the evidence in this case that the Ford car had broken down, then it became the duty of the driver to remove the car to a place of safety off the highway as soon as possible and moving on the shoulders would not be a compliance with that duty."

The contention is that the instruction was erroneous in telling the jury that moving the disabled car onto the shoulder was not a compliance with the operator's duty to remove it from the highway.

We do not agree. Code, § 46-256, provides that "No vehicle shall be stopped in such a manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical

breakdown, in which case the vehicle shall be removed from the highway as soon as possible; * * * ."

In *Crouse* v. *Pugh*, 188 Va. 156, 49 S. E. (2d) 421, 4 A. L. R. (2d) 1242, we held that the term "highway" includes the shoulders as well as the paved portion of the road. Hence, the instruction correctly told the jury that it was the duty of the driver to remove the disabled car as soon as possible, not only from the paved portion of the highway but the shoulders as well.

The defendant challenges the refusal of Instructions 6-D and 6-D-A, which in substance told the jury that if they believed from the evidence that the disabled car "was being pushed along the westbound driveway near the center," or along the highway "in such a position as would appear to a person of ordinary prudence as a dangerous position," "then the person who was responsible" therefor was "guilty of negligence." Each of the instructions then closed with this language: "And if you believe from the evidence that while it was being pushed the plaintiff's decedent placed himself at or near the rear left side of the Ford car assisting in pushing the same in the path of the approaching traffic, then the plaintiff's decedent assumed the risk involved in so doing, and you should find for the defendant if the plaintiff's decedent's act in so doing proximately contributed to his injury."

In lieu of these instructions the court, on its own motion, gave Instruction 6-D-B which told the jury that when the disabled car "came to an emergency stop" it was the driver's "duty to remove same from the highway as soon as possible;" that in so doing it was "his further duty to use ordinary care not to impede traffic * * * , to stay as far to the right side of the highway as practicable considering the width of the highway and shoulder thereof, weather conditions, and visibility and all other circumstances then obtaining;" and that if the driver failed in any of these requirements he was negligent. The jury were further told that if they found that the driver was thus negligent, "then plaintiff's decedent as-

sumed the risk involved when he placed himself at or near the rear left side of the Ford automobile and assisted in pushing same and you should find for the defendant if plaintiff's decedent's act in so doing proximately contributed to the accident."

We see no material difference in the language used in the instructions asked for and that granted with respect to the principle of assumption of risk. Each was more favorable to the defendant than he was entitled to in that it told the jury that the conduct of the plaintiff's decedent, as a matter of law, constituted an assumption of risk, which, under the circumstances, was tantamount to saying that he was guilty of contributory negligence. As has been said, that was a matter which should have been submitted to the jury. The defendant is, of course, in no position to complain of this ruling in his favor.

On the whole we find no prejudicial error in the record, and the judgment is

*Affirmed.*