COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Agee and Senior Judge Hodges
Argued at Chesapeake, Virginia


DEQUAN SHAKEITH SAPP

                                        OPINION BY
v.    Record No. 0483-00-1          JUDGE G. STEVEN AGEE
                                          MAY 22, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Randolph T. West, Judge

            (David B. Olson; Cope, Olson & Yoffy, P.L.C.,
            on brief), for appellant.  Appellant
            submitting on brief.

            H. Elizabeth Shaffer, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


    The Circuit Court of the City of Newport News convicted

Dequan Shakeith Sapp (Sapp) in a bench trial of robbery, maiming

and two counts of using a firearm in the commission of those

felonies.  He was sentenced to serve a total of eleven years for

these offenses.

    Sapp contends on appeal the trial court erred when it

permitted the prior recorded preliminary hearing testimony of the

victim and an eyewitness to be admitted into evidence where both

witnesses were present at trial but refused to testify.  Finding

no error by the trial court, we affirm the convictions.

Background

On Sunday, April 4, 1999, Sean McClellan (McClellan) dropped Billy Perkins (Perkins) off near his home after a shopping trip.  As Perkins began walking toward his home, two cars pulled up next to him.  Sapp and four other men jumped out of the vehicles and surrounded Perkins.  Sapp asked Perkins, "where's my brother's shit," which Perkins understood as a reference to cocaine.  When Perkins denied that he had any cocaine, Sapp ran over to his car, pulled out a Tech 9 gun and returned to Perkins.  Pointing the gun at Perkins' face, Sapp grabbed the gold chain hanging on Perkins' neck and pulled it off.  As Perkins backed up so that he was seated on one of the cars, the group of men repeatedly punched him and rifled through his pockets, stealing his pager.  Perkins heard someone say, "slit his wrist, slit his wrist."  Perkins managed to get to his feet and flee.  He was later treated at a hospital where wounds to his hand and lip were stitched.

McClellan witnessed the crimes from his vehicle.

On August 24, 1999, both Perkins and McClellan testified at length in the preliminary hearing and were cross-examined extensively by two defense counsel.  Sapp changed counsel between the preliminary hearing and trial.

At trial on December 21, 1999, both Perkins and McClellan were sworn as witnesses but refused to testify, each telling the trial judge he was afraid for his life.  Perkins testified:

-

> I'm too scared, you know, to say anything,
> testify, for the simple fact I'd be
> jeopardizing my life . . . . I know what
> happened, but I'm too scared, you know, to
> say . . . .

Similarly, McClellan testified:

> I don't want to testify. I don't want to
> testify . . . . I don't feel safe
> testifying.

McClellan also testified that he "forgot a lot of stuff."

Perkins and McClellan both stated in open court that they were refusing to testify. Upon examination by the Commonwealth's attorney, both Perkins and McClellan affirmed that they remembered their appearance at the preliminary hearing and that the testimony given at the preliminary hearing had been truthful. Neither could identify specific threats from Sapp or persons acting for Sapp, but both had heard "talk on the street" threatening their personal safety if they testified at trial.

The Commonwealth moved to have Perkins' and McClellan's testimony from the preliminary hearing entered into the record, on the basis that each witness "is declaring himself unavailable." In its motion, the Commonwealth cited our decision in Jones v. Commonwealth, 22 Va. App. 46, 467 S.E.2d 841 (1996), as recognizing a hearsay exception for prior testimony of an unavailable witness. Sapp's trial counsel timely objected to the introduction of the preliminary hearing testimony and asked the trial court to use its contempt power to compel Perkins and McClellan to testify.

-

The trial judge conducted a colloquy with each witness to verify he knew the refusal to testify meant his prior testimony would be read into the trial record. The trial judge opined that he could not use the contempt power in this setting. The judge, citing Jones, then denied Sapp's motion and admitted into the record the preliminary hearing testimony of Perkins and McClellan. Sapp was convicted and later sentenced.

## Analysis

On appeal, Sapp alleges several grounds for his contention that the trial court erred when admitting the prior testimony. All of Sapp's arguments are tied to his constitutional right to confront the witnesses against him. (U.S. Const. amend. VI; Va. Const., art. I, § 8). Citing Longshore v. Commonwealth, 260 Va. 3, 530 S.E.2d 146 (2000), Sapp argues the case law requirements for introducing prior testimony were not met.

In Longshore, the Supreme Court of Virginia reiterated the general standards under which prior testimony of an unavailable witness may be admitted at a later proceeding as an exception to the rules of evidence regarding hearsay.

> [T]he preliminary hearing testimony of a
> witness who is absent at a subsequent
> criminal trial may be admitted into evidence
> if the following conditions are satisfied:
> (1) that the witness is presently
> unavailable; (2) that the prior testimony of
> the witness was given under oath (or in a
> form of affirmation that is legally
> sufficient); (3) that the prior testimony
> was accurately recorded or that the person
> who seeks to relate the testimony of the

-

> unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and (4) that the party against whom the prior testimony is offered was present, and represented by counsel, at the preliminary hearing and was afforded the opportunity of cross-examination when the witness testified at the preliminary hearing.

Id. at 3-4, 530 S.E.2d at 146-47 (citations omitted). Essentially, Sapp alleges conditions one and four were not met in this case. No error is alleged as to the second and third requirements.

As to the "unavailability" of the witnesses, Sapp argues his case is distinguishable from our ruling in Jones because the reluctant witness there was "unavailable" due to real or feigned memory loss. Because Perkins and McClellan claimed fear, not memory loss, as their reason not to testify, Sapp argues Jones should not apply. Sapp also avers that the witnesses could have been made "available" had the trial court threatened them with contempt, which the court refused to do.

As to the last condition in Longshore, Sapp argues that because trial counsel, as opposed to his counsel at the preliminary hearing, could not cross-examine Perkins and McClellan, he was denied his constitutional right to confront the witnesses against him.

## I. The Unavailable Witness

Both the United States Supreme Court and the Supreme Court of Virginia have long recognized the admissibility in a criminal

-

trial of prior recorded testimony of an unavailable witness under certain circumstances. Mattox v. United States, 156 U.S. 237 (1985); Fisher v. Commonwealth, 217 Va. 808, 232 S.E.2d 798 (1977). The preliminary condition which must be met is that the declarant, whose former testimony is to be admitted into evidence as a hearsay exception, must be "unavailable." Doan v. Commonwealth, 15 Va. App. 87, 100, 422 S.E.2d 398, 405 (1992).

"The party offering the hearsay testimony has the burden of establishing the witness' 'unavailability.' Determining whether the offering party has met its burden and, thus, whether the declarant is 'unavailable,' is left to the trial court's discretion." Jones, 22 Va. App. at 50, 467 S.E.2d at 843.

While we have recognized a number of factors which may satisfy the foundational requirement of "unavailability" of a witness (i.e., the witness dies), it is clear there is no exclusive list. Id. at 50-51, 467 S.E.2d at 843; see also Charles E. Friend, The Law of Evidence in Virginia § 18-9 (4th ed. 1993). To the contrary, the Supreme Court of Virginia's long-standing rule is "that a sufficient reason is shown why the original witness is not produced." Wise Terminal Co. v. McCormick, 107 Va. 376, 379, 58 S.E. 584, 585 (1907); accord Burton v. Oldfield, 195 Va. 544, 550, 79 S.E.2d 660, 664 (1954).

Based on this precedent, we held in Jones that the prior testimony of Brown was admissible because Brown's testimony was unavailable even though he was present in court.

-

> [T]he trial court did not abuse its discretion in finding that Brown's memory loss at trial, <u>whether real or feigned</u>, rendered him unavailable. Brown's testimony at trial was not forthcoming, despite the Commonwealth's repeated questions, its attempt to refresh his memory, and its grant of immunity. <u>Brown admitted that he simply did not want to testify and ultimately could not be compelled to "remember</u>." Thus, although Brown appeared in court and testified to his present lack of memory, he was "unavailable" for purposes of the exception. In such cases, the focus of the inquiry is not the unavailability of the witness but the unavailability of the testimony.

22 Va. App. at 52, 467 S.E.2d at 844 (emphasis added).

We see no meaningful distinction between the unavailable witness testimony by reason of memory loss in <u>Jones</u> and the unavailable witness testimony of Perkins and McClellan by reason of fear. The unavailable testimony of a fearful witness is as unavailable as if the witness had forgotten the events or become incapacitated. The testimony is simply not available, and no means is extant to make it so.

Contrary to Sapp's contention that <u>Jones</u> only refers to witnesses with failed memory, the reluctant witness there "simply did not want to testify." <u>Id.</u> Perkins' and McClellan's refusals here are not mere recalcitrance, but were based on a real fear of retribution or retaliation if they testified. The testimony of Perkins and McClellan was uncontradicted as to the fear for their safety should they testify at trial.

-

The trier of fact was uniquely and appropriately situated to observe the demeanor of both witnesses and ascertain whether or not their testimony of fear-induced silence was real or feigned. Witness credibility, the weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder, and the trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. See Code § 8.01-680; see also Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

An exception to the hearsay rule on unavailability of the declarant due to the witness' refusal to testify based on fear appears to be a question of first impression in Virginia. Other states and the federal courts have dealt with such a refusal to testify, have found the fearful witness "practically unavailable," and have ruled that the witness' prior testimony was admissible as a valid hearsay exception and not violative of the Confrontation Clause.

In Geraci v. Senkowski, 211 F.3d 6 (2d Cir. 2000), the United States Court of Appeals for the Second Circuit, applying New York state law in a habeas corpus proceeding, ruled that where a witness refuses to testify out of fear, and the prosecutor demonstrates that the witness has been threatened, the witness is "practically unavailable" for purposes of the hearsay exception for prior testimony. Id. at 9-10.

-

In Geraci, an eyewitness to a stabbing testified before a state grand jury that he saw the defendant stab the victim. It was later discovered that the grand jury minutes were missing, and, just prior to trial, the witness quit his well-paying job without notice and fled from his home. When he subsequently was located in Florida, the witness stated that he had been approached by a person who showed him the grand jury minutes describing his testimony and that both he and his family were threatened. In addition, he had been offered and received substantial sums of money for staying away from New York until after the trial. None of these events, though, could be personally connected to Geraci, the defendant.

Prior to testifying at trial, the witness indicated to prosecutors that he would change the story he had given under oath before the grand jury. The witness followed through with his plan and testified that he had not seen the stabbing. He explained the discrepancy between this testimony and his testimony before the grand jury on the ground that when he first testified he was unsure of the facts because the club had been dark and he had been drinking.

The state trial court determined that the witness was "markedly evasive" in this testimony. The trial court also found that the prosecution had demonstrated by clear and convincing evidence that someone acting on Geraci's behalf

-

threatened the witness and that if required to testify, the witness would do so falsely.  As a result, the trial court found the witness "practically unavailable" and permitted the use of his grand jury testimony in the prosecution's case.  Geraci was convicted, and the appellate courts of New York affirmed.  The Second Circuit held, "'a witness who is so fearful that he will not testify' or will testify falsely, 'is just as unavailable as a witness who is dead or cannot be found.'"  Id. at 9 (citations omitted).

We find no merit in Sapp's claim that the trial court erred by not using the contempt power to compel Perkins and McClellan to testify.  As at trial, Sapp cites no authority for this argument.  The use of the court's contempt power is discretionary, not mandatory, and cannot be applied in all situations.  Code § 18.2-456; see also Higginbotham v. Commonwealth, 206 Va. 291, 142 S.E.2d 746 (1965).  The record does not reflect the trial judge acted improperly or abused his discretion in this regard.  To the contrary, the trial judge pointed out to each witness that his preliminary hearing testimony would be used against Sapp if the witness continued to refuse to testify.  Thus, the trial judge clearly informed each witness he could not escape the use of his testimony.

We conclude the first condition of Longshore was satisfied. The witnesses, Perkins and McClellan, were unavailable because

-

they refused to testify based on uncontradicted evidence of their fear for their personal safety.

## II. Opportunity of Cross-Examination

Sapp argues that the last prong of Longshore was violated in this case because his trial attorney did not cross-examine Perkins and McClellan at the preliminary hearing. Accordingly, Sapp avers his Confrontation Clause right was thwarted. We disagree.

Longshore and prior case law are manifestly clear that it is the "opportunity of cross-examination" which must be available at the prior proceeding. Longshore, 260 Va. at 4, 530 S.E.2d at 147 (citations omitted). There is no support for Sapp's argument that this "opportunity" is provided only if trial counsel is the person afforded that opportunity.

The record plainly reflects Perkins and McClellan were subject to extensive cross-examination at the preliminary hearing by two attorneys. Between the preliminary hearing and trial, Sapp changed counsel. Without question, Sapp received and exercised the opportunity of cross-examination. We find no merit to his contention that such opportunity should apply only to his last counsel of record.

For the foregoing reasons, we hold Sapp's Confrontation Clause rights were met. The witnesses' preliminary hearing testimony was properly admitted at trial because they were effectively unavailable and Sapp had been adequately afforded

-

the opportunity of cross-examination at the prior proceeding.

Accordingly, all of Sapp's convictions are affirmed.

<u>Affirmed</u>.

Benton, J., dissenting.

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The United States Supreme Court has held that this right of confrontation is fundamental and is made obligatory on the States through the Fourteenth Amendment.  Pointer v. Texas, 380 U.S. 400, 403 (1965).  While the Confrontation Clause and the hearsay rules have similar aims, their prohibitions are not equivalent.  Idaho v. Wright, 497 U.S. 810, 814.  "The Confrontation Clause . . . bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule."  Id.  In order to satisfy the Confrontation Clause, the prosecution must establish that use of the prior testimony is necessary because the declarant is unavailable and the evidence bears adequate "indicia of reliability," such as where it falls within a firmly rooted hearsay exception.  Id. at 814-15.

The rule is well established in Virginia concerning the admission of such evidence as an exception to the hearsay rule. As a prerequisite to the admission into evidence of testimony given at a former hearing, the record must establish the "unavailability" of the witness.  Burton v. Oldfield, 195 Va. 544, 549-50, 79 S.E.2d 660, 664 (1954).

In this case, the Commonwealth failed to satisfy the "unavailability" requirement necessary to conform to the

-

strictures of both the Confrontation Clause and the hearsay rule.  The record clearly establishes that Sean McClellan and Billy Perkins were present in the courtroom and testified under oath.  In no sense can we say either was "an absent witness," which was the circumstance existing in Longshore v. Commonwealth, 260 Va. 3, 3, 530 S.E.2d 146, 146 (2000).

In addition, the testimony of each witness establishes that he was not "unavailable."  As we noted in Jones v. Commonwealth, 22 Va. App. 46, 467 S.E.2d 841 (1996), Virginia precedent has established a partial list of reasons why a declarant may be "unavailable," including death, illness and the opposing party's causing the declarant's absence.  22 Va. App. at 50-51, 467 S.E.2d at 843.  In Jones, we expressly decided as an issue of first impression in Virginia "[w]hether a witness' lack of memory renders the witness 'unavailable.'"  Id. at 50, 467 S.E.2d at 843 (emphasis added).  The record in that case established the following:

> At Jones' trial, the Commonwealth called both Johnson and Brown as witnesses.  Both men testified that they did not remember either the incident or having spoken with the police.  Brown further claimed that he did not know Jones and that he had no memory of the events leading to Watson's death.  In response to the Commonwealth's questions, Brown asserted his Fifth Amendment right against self-incrimination.  The Commonwealth then granted immunity to Brown, but Brown claimed that he did not want to testify.  Brown continued to maintain that he could not remember the crime.  He also maintained that he could not remember his

-

statement to the police, or testimony at the preliminary hearing.

Id. at 49, 467 S.E.2d at 843. Under these circumstances, the trial judge "concluded that Brown's inability to remember his preliminary hearing testimony rendered him an 'unavailable' witness." Id. at 49-50, 467 S.E.2d at 843. We affirmed the trial judge's decision to allow the use of the witness' prior testimony, and we held that "although [the witness] appeared in court and testified to his present lack of memory, he was 'unavailable.'" Id. at 52, 467 S.E.2d at 844. We did not hold that mere unwillingness to testify was sufficient to make a witness "unavailable."

Citing Geraci v. Senkowski, 211 F.3d 6, 8 (2d Cir. 2000), the Commonwealth argues that general fear of testifying makes a witness unavailable. In Geraci, however, the record established the following:

> The trial court determined that Terranova had been "markedly evasive" in his testimony at the hearing. The trial court also found that the prosecution had demonstrated by clear and convincing evidence that Terranova had been threatened by [the accused] or someone acting on [the accused's] behalf, and that if required to testify, he would do so falsely. As a result, the trial court found Terranova "practically unavailable" and permitted the use of his grand jury testimony in the prosecution's case.

Id. at 8.

Upon these findings, the court in Geraci held that the witness "was 'practically unavailable' because of threats

-

against him and his family made on behalf of [the accused]." Id. at 9.  In other words, Geraci merely restates the well established, unremarkable proposition that "[an accused] who procures a witness's absence waives the right of confrontation for all purposes with regard to that witness, not just to the admission of sworn hearsay statements."  United States v. Aguiar, 975 F.2d 45, 47 (2d Cir. 1992).

I believe that we eviscerate the Confrontation Clause and the hearsay rule by expanding the meaning of "unavailability" to include a generalized fear of harm.  This unprecedented expansion unreasonably curtails an accused's right to confront the witnesses against him or her any time a witness simply refuses to testify without identifying a specific, credible threat.  The majority's position imposes a limitation that hinders the accused's right of confrontation and the fact finder's ability to determine the truth of a matter.[1]

Furthermore, the Commonwealth has not borne its burden of proving that Sapp caused or contributed to the reluctance of these witnesses to testify.  No evidence in this case tends to prove that Sapp or anyone acting on his behalf threatened or

---

[1] The position taken by the majority and the trial judge is further undermined by the fact that the witnesses' preliminary hearing testimony was admitted despite the witnesses' fear that they would be harmed if they testified.  In effect, these witnesses were allowed to control the presentation of their testimony.  Rather than acquiesce to these conditions, the trial judge should have explored every avenue that might have led them to testify, including use of the contempt power.

-

intimidated these witnesses.  The evidence proves only that McClellan and Perkins were reluctant to testify and expressed only a general fear because of "hearing talk here and there in the streets."  This evidence was not sufficient to prove the witnesses were unavailable and would not have testified under proper circumstances and safeguards.

I would hold that the mere unwillingness of a witness to testify because of a generalized fear is insufficient to make the witness "unavailable."  Accordingly, I would hold that the trial judge erred by admitting into evidence at trial, as an exception to the hearsay rule and the commands of the Confrontation Clause, the witnesses' prior testimony given at a preliminary hearing.

I dissent.