COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Richmond, Virginia


OSSIE LEE RICHARDSON

MEMORANDUM OPINION[*] BY
v.    Record No. 2440-00-2        JUDGE ROBERT J. HUMPHREYS
OCTOBER 30, 2001

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

C. David Whaley (Anthony G. Spencer;
Morchower, Luxton & Whaley, on briefs), for
appellant.

Michael T. Judge, Assistant Attorney General
(Randolph A. Beales, Attorney General, on
brief), for appellee.


Ossie Lee Richardson appeals his conviction, after a bench

trial, for possession of cocaine. Richardson contends that the

trial court erred in finding the evidence sufficient to convict

him of the offense. We disagree and affirm his conviction.

> Where the sufficiency of the evidence is
> challenged after conviction, it is our duty
> to consider it in the light most favorable to
> the Commonwealth and give it all reasonable
> inferences fairly deducible therefrom. We
> should affirm the judgment unless it appears
> from the evidence that the judgment is
> plainly wrong or without evidence to support
> it.

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Furthermore, "[w]itness credibility, the weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder, and the trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." Sapp v. Commonwealth, 35 Va. App. 519, 526, 546 S.E.2d 245, 249 (2001) (citing Code § 8.01-680; Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989)).

So viewed, the evidence presented at trial established that on February 21, 2000, at approximately 10:00 a.m., Henrico County Police Officer E.C. Krevonick, while on routine patrol, observed a car parked in front of a hotel room in the parking lot of a Ramada Inn, with a defective tail-light. Officer Krevonick stopped the car and found three individuals in the car, the driver, Richardson and a female passenger. The driver gave Krevonick permission to search the car. Accordingly, the three passengers got out of the vehicle. Each of the passengers, including Richardson, then gave Officer Krevonick permission to search their persons. Officer Krevonick found nothing incriminating upon searching the driver and Richardson, but determined that the female passenger had been previously banned from the property. Krevonick escorted the female off the property. Upon returning, he explained to the driver and Richardson that the area was known to be a high drug-traffic

-

area.  The driver indicated that he was unaware of that fact, then he and Richardson returned to the car and left the premises.

Approximately two hours later, Officer Krevonick observed the same car "in front of the room again."  After observing the car for a few minutes, Officer Krevonick saw Richardson, the driver and a female leave the room and get in the car.  Krevonick then approached the passenger side of the car and asked why they had returned to the area.  After some discussion, Krevonick again asked for consent to search the car and the driver agreed.  As Richardson began to get out of the front passenger seat, Krevonick observed him "ben[d] down with his hand and [drop] a glass vial onto the ground."  Krevonick then attempted to detain Richardson, and a struggle ensued.  During the struggle, "[Richarson] took his left foot and smashed the [glass vial] on the ground."

During his testimony at trial, Officer Krevonick, who had observed such items before, referred to the glass vial as a "round thin pipe, commonly used to smoke crack cocaine."  He described it as "all glass," and stated "it, uh, looked like it had - usually people use what's called Chore Boy to filter the crack cocaine and it appeared that it had that inside of it with the residues, black-looking."  Richardson raised no objection to Krevonick's characterization of the vial.  Krevonick also testified that during his first encounter with Richardson,

-

earlier that morning, Richardson had told him that he had smoked crack cocaine on occasion.

Krevonick arrested Richardson and advised him of his <u>Miranda</u> rights. He then found the broken glass and "picked up the pieces." When asked by the prosecutor if he had talked to Richardson about "the piece of evidence [he had] found," Krevonick testified that Richardson said "it was not his, that he did not drop it."

Krevonick took the evidence to the police station to be checked into "Property." It was then taken to the state forensic laboratory for analysis. The certificate of analysis described the evidence submitted by Officer Krevonick as follows:

> Item 2  One (1) sealed yellow envelope containing one (1) sealed plastic evidence bag containing pieces of glass, a black plastic tube and a piece of copper wool, each containing residue
>
> RESULTS:
>
>  *       *       *       *       *       *       *
>
> Item 2  Cocaine (Schedule II).

Krevonick testified that he did not know where the black plastic tube or copper wool had come from.[1] He conceded that the only item he saw Richardson drop was "a glass vial that was in

---

[1]  Officer Krevonick testified that he had taken a photograph of the material he had picked up off the ground and stated, after reviewing the photograph, that the black plastic tube and the copper wool appeared in the photo with the broken glass. However, the photograph was not admitted into evidence as an exhibit.

-

his hand."  Officer Krevonick stated that the black plastic tube and the copper wool could have been inside the glass tube, but he had "no idea," because Richardson had stepped on the glass vial.

At the close of the Commonwealth's case and at the close of the evidence, Richardson raised a motion to strike pointing out that Officer Krevonick did not know where the black plastic tube had come from, but that he took "all three of the items, [and] place[d] them in the bag."  He contended "you don't know which one of those items [was] tested at the lab, because the lab report doesn't reflect that," and stated, "I think it defies logic to think that they tested everything.  But yet the burden of proof is on them to show that they tested the particular piece of glass that he possessed, and that would be our motion to strike."  The trial court overruled each motion, noting that the certificate of analysis stated "[e]ach" of the submitted items contained residue, which tested positive for cocaine.  Richardson was subsequently found guilty and sentenced to nine months in jail.

On appeal Richardson argues that the trial court erred in finding the evidence sufficient to establish that he knowingly and intentionally possessed the cocaine.  Specifically, Richardson contends that the certificate of analysis is ambiguous and that, therefore, the Commonwealth failed to prove that the pieces of glass were analyzed and contained cocaine.  In the alternative, Richardson argues that by placing the glass pieces

-

in the plastic evidence bag, with a black plastic tube containing residue, Officer Krevonick could have contaminated the glass.

We first note that "[t]he Commonwealth may prove possession of a controlled substance by showing either actual or constructive possession." Barlow v. Commonwealth, 26 Va. App. 421, 429, 494 S.E.2d 901, 904 (1998). Here, there is no question that Richardson actually possessed the glass vial. The uncontradicted testimony of Officer Krevonick establishes that Richardson had the vial in his hand when he got out of the car, that he bent down toward the ground and dropped it, and then crushed the vial with his foot during his struggle with Krevonick. Thus, the only relevant issue is whether the evidence presented by the Commonwealth was sufficient to establish that the vial contained cocaine. We agree with the trial court and find that it was.

The certificate of analysis unambiguously states that "each" of the items contained in the bag contained "residue." The result of the analysis clearly states that this "residue" tested positive for cocaine. Although the certificate does not explicitly set forth each item and state that the residue on each particular item contained cocaine, we find that a plain reading of the report supports the trial court's conclusion that each of the items was tested and that residue found on each of the items tested positive for cocaine. Moreover, Richardson's attempt to get rid of the glass vial and/or to destroy it tends to

-

demonstrate his guilty knowledge regarding the cocaine residue on the vial, and further supports the trial court's determination. See Pearson v. Commonwealth, 221 Va. 936, 946, 275 S.E.2d 893, 900 (1981) ("In all cases of circumstantial evidence the conduct of the accused is always an important factor in the estimate of the weight of circumstances which point to his guilt." (quoting Dean v. Commonwealth, 73 Va. (32 Gratt.) 912, 923 (1879))).

Finally, we do not address Richardson's alternative argument concerning the alleged contamination of the glass as Richardson failed to raise a contamination argument before the trial court. See Rule 5A:18; see also Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that an appellate court will not consider an argument on appeal different from one raised at trial even if it is related to the same issue). Indeed, Richardson's only argument before the trial court consisted of his theory that the certificate of analysis failed to identify with particularity whether the glass had been tested, and whether it contained cocaine residue in and of itself. As we have found that it does, we affirm the decision of the trial court.

Affirmed.

-