PRESENT: All the Justices

DEQUAN SHAKEITH SAPP

                                              OPINION BY
v.  Record No. 011244                 JUSTICE DONALD W. LEMONS
                                            March 1, 2002
COMMONWEALTH OF VIRGINIA

              FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the trial court abused

its discretion by admitting into evidence prior testimony given

at a preliminary hearing by two witnesses who did not wish to

testify at trial and were therefore deemed "unavailable."

              I.  Facts and Proceedings Below

     Dequan Shakeith Sapp ("Sapp") was charged with robbery,

malicious wounding, and two counts of use of a firearm in the

commission of those felonies.  The victim, Billy W. Perkins, Jr.

("Perkins"), and a witness to the crimes, Sean McClellan

("McClellan"), testified at the preliminary hearing in general

district court and were subject to extensive cross-examination

by counsel for Sapp and counsel for a co-defendant.  The general

district court certified the charges to the grand jury, and the

grand jury subsequently returned four indictments against Sapp.

     At a bench trial where Sapp was represented by different

counsel than his preliminary hearing counsel, Perkins and

McClellan were sworn as witnesses, but both refused to testify

concerning the substance of the allegations.  Perkins told the

Commonwealth that he was "too scared, you know, to say anything,

testify, for the simple fact I'd be jeopardizing my life."  The

Commonwealth asked Perkins if he had been threatened and he

replied, "[n]ot officially, but maybe one or two verbal

threats."  When asked if he remembered the events in question,

Perkins said, "I know what happened, but I'm too scared, you

know, to say, petrified.  I got a little daughter to live for."

At this point, the trial court and the Commonwealth further

inquired about Perkins' fear of testifying:

> COURT:  Mr. Perkins, I can understand where
> you're coming from.  The Court is not going
> to force you to testify . . . .  I'm not
> going to force you.
>
> PERKINS:  Judge, that will lead now to me
> being the cause of somebody dying or
> somebody being the cause of my death, which,
> I can just flee out of state right now where
> my daughter lives.  You see what I'm saying?
>
> COURT:  I can't argue that.  But is that the
> way you want to live the rest of your life?
>
> PERKINS:  Yeah.  See, I don't want to be
> affiliated with this.
>
> COMMONWEALTH:  Are you refusing to testify,
> Mr. Perkins?
>
> PERKINS:  Yes.

The Commonwealth then sought to have Perkins' preliminary

hearing testimony read into the record.  Before permitting the

introduction of prior transcribed testimony, the following

exchange took place:

2

COURT: Mr. Perkins, you have previously been on the stand and you are aware that there is a charge of robbery pending against Dequan Shakeith Sapp in which you were named as the victim in the indictment. You have told the Court that you remember the facts of this situation which occurred, apparently, on April 4, 1999, but that you refused to relate those facts to the Court at this time. You have received, you said, I believe verbal threats and that you have fear for your safety at this time if you testify. Is this correct, everything that I have just stated?

PERKINS: Correct. Yeah.

COURT: And I'm giving you an opportunity at this point to either change your position, that is, that you will testify, or – as I say, I cannot compel you to testify, as I told you previously, and won't, but I just want to be absolutely sure, for the record, that this is your position, that you refuse to testify.

PERKINS: Correct.

COURT: Now, I'm going to go one step further. This is not to intimidate you in any manner. This is not a threat in any manner. Under the law, if you refuse to testify in a case where you have given testimony previously in the case, that testimony can be read into the record and I am here to tell you that it will be read into the record. And it is still your position that you refuse to testify?

PERKINS: Yes.

The Commonwealth continued the questioning by confirming that Perkins remembered testifying under oath at the preliminary hearing and remembered being questioned by both the

3

Commonwealth's Attorney and the defense attorneys. Citing <u>Jones v. Commonwealth</u>, 22 Va. App. 46, 467 S.E.2d 841 (1996), the trial court permitted the introduction into evidence of Perkins' prior sworn testimony. Sapp objected, arguing that in <u>Jones</u> the witness was unable to remember his former testimony. However, Perkins suffered no problems with memory; he simply refused to testify. Sapp further argued that the trial court could compel Perkins' testimony by threat of contempt.

McClellan took the witness stand and similarly stated: "I don't want to testify." The trial court then inquired of McClellan:

> COURT: Why don't you want to testify?
>
> McCLELLAN: Because I don't feel comfortable testifying.
>
> COURT: What do you mean, you don't feel comfortable testifying?
>
> McCLELLAN: I don't feel safe testifying.
>
> . . . .
>
> COURT: What do you mean, you don't feel safe? . . . What reason do you have to believe that you aren't safe if you testify?
>
> . . . .
>
> McCLELLAN: I just don't feel safe.
>
> COURT: Well, that's not a reason. . . . Has somebody given you a reason that you don't feel safe?

4

McCLELLAN:   I mean just hearing talk here and there in the streets.

COURT:   Hearing talk in the streets?   What kind of talk?

McCLELLAN:   Like, "Don't go to court," talk.

COURT:   Do you know who said that?

McCLELLAN:   No.   It's just getting back to me word of mouth . . . .   I didn't really want to come [to court this morning].

COURT:   I understand that you didn't want to come.   Have you testified previously in this case at the preliminary hearing?

                    . . . .

McCLELLAN:   I think I did.   Yeah.

COURT:   Did you tell what happened at that time?

McCLELLAN:   Uh-huh.

COURT:   Well, why, if you told at that time, why don't you feel you could do it today?

McCLELLAN:   Because I realize that I made a mistake testifying from the beginning.

COURT:   Do you mean you made a mistake in judgment or do you mean you told something below in the District Court that wasn't true?

McCLELLAN:   I mean in judgment.

COURT:   So what you testified to in the District Court was true, but you just don't want to testify today to the same thing?

McCLELLAN:   Yeah.   I think I forgot a lot of the stuff I testified to, because it's been so long and I do so much stuff.

5

COURT: Do you want the Commonwealth to refresh your memory on it and then you testify or are you just refusing to testify?

McCLELLAN: I mean if I'm going to jail for refusing to testify -- I mean I just don't feel safe testifying, period. I mean I just don't feel safe.

COURT: Well, I understand that and I can't tell you that I'm going to protect you or the police are going to protect you. I can't do that. I wish I could.

. . . .

McCLELLAN: It's been so long that -- like they was asking me a lot of questions out there and I forgot a lot of it because, like I said, I thought that all this was over with and I just realized that it wasn't over with.

. . . .

COURT: If [the Commonwealth] refreshes your memory with it, would that help you?

McCLELLAN: I really don't even want to speak about it.

COURT: I understand that you don't want to, but I'm going to tell you that if you refuse to testify, that your testimony from the District Court is going to go into the record and it's going to be used.

McCLELLAN: Nothing can happen to me for refusing to testify?

COURT: I'm not going to put you in jail for refusing to testify, no.

McCLELLAN: Okay. Then I don't want to testify.

COURT: You are refusing to testify?

McCLELLAN: Yes.

COURT: Even though the Court has told you that I'm going to use your testimony previously given?

McCLELLAN: Yes.

The Commonwealth then questioned McClellan to confirm that he remembered testifying under oath at the preliminary hearing. McClellan stated that he did remember testifying under oath, but he "was smoking a lot of marijuana around that time, so [he] forget[s] a lot of stuff." He clarified that he "was telling the truth that day," but further stated that he "forget[s] so much stuff." Defense counsel also questioned McClellan about his former testimony. When asked whether his mind was "messed up" when he previously testified, McClellan replied that he didn't remember, "it's been so long, I can't even answer that question truthfully." McClellan further stated: "[I]f I was under oath, I told the truth, but I can't remember that exact day. . . ." When asked if he was "absolutely sure" that he would tell the truth under oath, he answered, "Yes, [if I was] under oath."

The Commonwealth moved to introduce McClellan's prior recorded testimony into evidence. Sapp made the same objections that he made to the admission of Perkins' former testimony. Over Sapp's objections, McClellan's former testimony was read

7

into evidence.  Sapp was subsequently convicted of all four charges and sentenced.

Sapp appealed his conviction to the Court of Appeals of Virginia which affirmed the judgment of the trial court.  Sapp v. Commonwealth, 35 Va. App. 519, 529, 546 S.E.2d 245, 250 (2001).  The Court of Appeals held that the two witnesses against Sapp were "unavailable" by virtue of the "uncontradicted evidence of their fear for their personal safety."  Id. at 528, 546 S.E.2d at 250.  The Court of Appeals held that there was

> no meaningful distinction between the unavailable witness testimony by reason of memory loss in Jones and the unavailable witness testimony of Perkins and McClellan by reason of fear.  The unavailable testimony of a fearful witness is as unavailable as if the witness had forgotten the events or become incapacitated.  The testimony is simply not available, and no means is extant to make it so.

Id. at 526, 546 S.E.2d at 249.

The Court of Appeals further held that Perkins and McClellan were subject to "extensive cross-examination at the preliminary hearing by two attorneys"; therefore the court concluded that Sapp had received and exercised his right of cross-examination, regardless of the fact that he had different representation at trial.  Id. at 528-29, 546 S.E.2d at 250. Sapp appeals from the adverse judgment of the Court of Appeals.

On appeal to this Court, Sapp argues that both Perkins and McClellan were physically available at trial and actually testified under oath about their concerns. Sapp maintains that their refusal to testify about the alleged criminal offense because of generalized concern for their safety was insufficient to establish the unavailability of their testimony and that the trial court erred in permitting the introduction of prior testimony from the preliminary hearing.

## II. Standard of Review

We review the trial court's determination of "unavailability" of a witness for the purpose of establishing admissibility of prior sworn testimony utilizing an abuse of discretion standard. Burton v. Oldfield, 195 Va. 544, 550, 79 S.E.2d 660, 665 (1954).

## III. Analysis

We have previously held that:

> [P]reliminary hearing testimony of a witness who is absent at a subsequent criminal trial may be admitted into evidence if the following conditions are satisfied: (1) that the witness is presently unavailable; (2) that the prior testimony of the witness was given under oath (or in a form of affirmation that is legally sufficient); (3) that the prior testimony was accurately recorded or that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and (4) that the

9

> party against whom the prior testimony is offered was present, and represented by counsel, at the preliminary hearing and was afforded the opportunity of cross-examination when the witness testified at the preliminary hearing.

Longshore v. Commonwealth, 260 Va. 3, 3-4, 530 S.E.2d 146, 146 (2000).  The determination of the "unavailability" of a witness is committed to the sound discretion of the trial court. Burton, 195 Va. at 550, 79 S.E.2d at 665 (1954).  Although the focus of the inquiry is often directed to the absence of a witness, the analysis also applies to circumstances when the witness is present, but for sufficient reasons the witness's testimony is "unavailable."  In the case before us, Perkins cited only fear as the basis of his refusal to testify, while McClellan cited both fear and loss of memory.  Our analysis is confined to the adequacy of the trial court's factual findings and procedures to determine the unavailability of these two witnesses.

In cases involving absent witnesses, we have required "that a sufficient reason be shown why the original witness is not produced; and that it is impossible, fairly speaking, for the person offering the evidence to produce the living witness or to take his deposition."  Wise Terminal Co. v. McCormick, 107 Va. 376, 379, 58 S.E. 584, 585 (1907).  We have held that:

> In order to establish a right to introduce testimony of a witness given at

10

> a former trial, it is incumbent upon the proponent of such evidence to lay a proper predicate for its introduction by showing the unavailability of the witness who gave the testimony sought to be produced.  In other words, the burden of satisfying the court of the validity of the excuse for nonproduction of witness lies upon the party seeking to introduce the testimony given by him at the former trial.  It must be shown either that the witness is dead, insane, or beyond the jurisdiction of the court or on diligent inquiry cannot be found or that some other circumstance exists which shows that the witness who gave the testimony at the former trial cannot be produced as witness on the second trial.

Burton, 195 Va. at 549-50, 79 S.E.2d at 664.  Use of such language as "impossible, fairly speaking . . . to produce the living witness," and "diligent inquiry," demonstrates a clear preference for live testimony and cross-examination rather than resorting to recitation of prior testimony.

The significance of the determination of "unavailability" was emphasized in our recent opinion in Paden v. Commonwealth, 259 Va. 595, 529 S.E.2d 792 (2000).  In Paden, a co-defendant who was present in the courtroom was not called to the stand and never asserted his Fifth Amendment right against self-incrimination.  The Commonwealth argued that the witness was unavailable because he could not be compelled to give evidence against himself.  Id. at 596, 529 S.E.2d at 793.  The co-defendant's statement was introduced under an exception to the

11

hearsay rule as a statement against penal interest as recounted by a police detective. Id. We held that the Commonwealth failed to establish the unavailability of the witness and that the trial court erred in admitting the detective's testimony because, "until [the witness] asserted those rights, he remained available to testify." Id. at 597, 529 S.E.2d at 793. The witness's refusal to testify had not been tested by appropriate procedures available to provide sufficient proof of unavailability of the testimony.

The narrow question before the Court in the present case is whether the trial court abused its discretion in finding the unavailability of both Perkins and McClellan and in admitting prior testimony from the preliminary hearing. On this record, we hold that the inquiry and procedures of the trial court constituted an insufficient basis for determining unavailability as a predicate to admission of prior testimony.

The proponent of hearsay testimony of an unavailable witness must demonstrate a "sufficient reason" for not producing the live testimony. Wise Terminal Co., 107 Va. at 379, 58 S.E. at 585. Before concluding that testimony is unavailable, the inquiry must include exploration of the subject matter of the testimony that prompts the reluctance of the witness and the reasons for refusal. Vague assertions of discomfort or generalized statements of fear or concern cannot rise to the

same level of significance as evidence of specific threats. While it is the litigants' responsibility to produce the evidence, appropriate judicial pressure should be employed to test the resolve of the witness. At a bare minimum, refusal to testify should be met with an order from the trial court directing the witness to testify.[1] Although use of contempt powers is clearly subject to the discretion of the trial court, a contempt order in response to continued refusal to testify after being ordered to do so should be carefully considered. As the United States Court of Appeals for the Second Circuit has observed:

> It is always possible that a recalcitrant witness who does not respond to judicial pressure will testify when ordered to do so rather than face contempt proceedings for refusal to obey the court's order. Once ordered to testify, a recalcitrant witness who has been bent on helping a co-defendant by not testifying may then point to the court's order as forcing him to do so.

United States v. Oliver, 626 F.2d 254, 261 (2d Cir. 1980). We are not unmindful of the realities of witness intimidation and the potential necessity of utilizing prior testimony when a witness refuses to testify. Nonetheless, the evidentiary foundations for utilizing hearsay testimony demand that the

---

[1] Federal Rule of Evidence 804 has similar requirements in its treatment of "unavailability."

13

resolve of the witness be significantly tested before the testimony is declared unavailable.

In the case before the Court, little if any judicial pressure was employed to test the resolve of Perkins' and McClellan's refusals to testify. Immediately upon Perkins expressing reluctance to testify based upon fear, the trial court assured him that the court was not going to require his testimony. The trial court stated, "Mr. Perkins, I can understand where you're coming from. The Court is not going to force you to testify . . . . I'm not going to force you." Later in the colloquy with the witness, the trial court stated, "as I say, I cannot compel you to testify, as I told you previously, and won't." Although there was reference by Perkins to "maybe one or two verbal threats" that Perkins characterized as not "official," the court made no inquiry concerning the nature and character of the threats, who made them, when they were made, or if the threats were specifically related to the case before the trial court. Any semblance of judicial pressure was completely removed when the trial court assured Perkins that nothing would happen to him as a result of his refusal to testify and that his prior testimony would be utilized instead.

McClellan followed Perkins to the witness stand and quickly informed the trial court that he did not want to testify because he did not "feel comfortable testifying." He further stated

14

that he did not feel safe and cited "hearing talk here and there in the streets. . . . Like, 'Don't go to court,' talk." He could not identify the nature and character of any threat, when the alleged threats were made, or who made them. Additionally, McClellan appeared to seek refuge in a claim of lack of memory based upon his use of marijuana. When the trial court asked if his memory could be refreshed, McClellan responded, "I really don't even want to speak about it." McClellan even asked the trial court, "Nothing can happen to me for refusing to testify?" To which the trial court responded, "I'm not going to put you in jail for refusing to testify, no." As with Perkins, any semblance of judicial pressure was completely removed when the trial court assured McClellan that nothing would happen to him as a result of his refusal to testify and that his prior testimony would be utilized instead.

When lack of memory is legitimate and refreshing of memory is not efficacious, judicial pressure to testify may result in untrustworthy testimony. However, the bona fides of a claim of loss of memory must be tested. The subject matter of lost memory must be established because a witness may have recollection of some matters and not of others. Lack of memory relates to capacity to testify. Feigned lack of memory is nothing more than refusal to testify which should be met with an order of the trial court to testify and careful consideration of

15

utilization of contempt powers as a sanction against continued refusal.  Of course, the trial court is in a unique position to evaluate the demeanor of the witness, and after proper inquiry, the decision of the trial court is entitled to great deference.  Upon persistent refusal to testify despite judicial pressures and an order to testify, or demonstrated bona fide lack of memory, the testimony of a witness may be declared unavailable and prior testimony may be admitted, provided that the additional evidentiary foundations, not at issue in this case, are met.[2]

On this record, we hold that the trial court abused its discretion in finding that the testimony of Perkins and McClellan was unavailable and thereafter admitting evidence of prior testimony from the preliminary hearing.  Because we decide this case based upon evidentiary requirements for admission of hearsay under state law, it is unnecessary to address Confrontation Clause issues under the Sixth Amendment to the United States Constitution.  We will reverse the judgment of the Court of Appeals and vacate the judgment of conviction in the trial court.  The case will be remanded to the Court of Appeals with directions to remand to the trial court for a new trial if the Commonwealth be so advised.

---

[2] We do not address in this opinion legitimate claims of privilege, physical or mental illness, or any other proffered

---

reasons for unavailability of testimony.