COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Haley
Argued at Chesapeake, Virginia


MARIO LAMAR TURNER

                                                            OPINION BY
v.        Record No. 1809-10-1                  JUDGE ROBERT J. HUMPHREYS
                                                            JULY 26, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge

        Charles E. Haden for appellant.

        Virginia B. Theisen, Senior Assistant Attorney General
        (Kenneth T. Cuccinelli, II, Attorney General, on brief), for
        appellee.


        Mario Lamar Turner ("Turner") was convicted in a bench trial in the Circuit Court of the

City of Newport News ("circuit court") of aggravated malicious wounding, in violation of Code

§ 18.2-51.2, and use of a firearm during the commission of a felony, in violation of Code

§ 18.2-53.1.  Turner was sentenced to forty years in prison with thirty-three years suspended for

aggravated malicious wounding, and to three years in prison for use of a firearm.  On appeal,

Turner contends that the trial court erred in permitting Assistant Public Defender Brian Keeley

("Keeley"), Turner's defense counsel at the preliminary hearing, to testify as a witness against

Turner at his trial.  For the following reasons, we disagree and affirm.

## I.  BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth.'"

Holloway v. Commonwealth, 57 Va. App. 658, 663, 705 S.E.2d 510, 512 (2011) (en banc)

(quoting Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006)).  "'Viewing the

record through this evidentiary prism requires us to discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Id. (quoting Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009)). So viewed, the evidence is as follows.

In 2009, Darnell D. Robinson ("Robinson") was a high school student at Warwick High School where he and his friends played football for the high school team. On the evening of September 12, 2009, Robinson was standing in the area of 722 22nd Street in Newport News with some friends discussing football when he was shot in his chest, arm, knee, and lower back. Robinson testified at trial that prior to the shooting, Turner approached the group as they were standing there, and spoke with Eric Poindexter ("Poindexter"), one of Robinson's friends. Ellis Butler, another friend of Robinson, testified that Turner then reached into his pocket, pulled out a gun, and shot Robinson several times.

On September 12, 2009, Newport News Police Officer Calhoun responded to the report of a shooting at approximately 9:17 in the evening in the area of 22nd Street and Marshall Avenue in Newport News. He observed a crowd down the street in front of 722 22nd Street, and proceeded down to that area. When he arrived, he found approximately ten people standing around Robinson who was lying on the ground bleeding with puncture wounds to his chest and underneath his right pectoral, and with blood on his knee. Robinson provided Officer Calhoun with his name, and Officer Calhoun accompanied Robinson to the hospital where he collected Robinson's personal items. Dr. Trinity Pilkington treated Robinson for the gunshot wounds that he suffered to his knee, clavical, forearm, and sacrum.

Around 11:00 p.m. on September 12, 2009, Newport News Police Officer William Soule went to 1008 Fabus Drive in response to another call that shots had been fired. The location was

approximately half-a-mile to a mile from where Robinson was shot, and was Turner's grandmother's home. When he arrived, Officer Soule found an unidentified male hiding under a tarp that covered a barbeque grill in the backyard. Officer Soule also found a cellular telephone on the deck of the house that kept ringing. Upon finding the phone, Officer Soule discovered a "trap door" in which he found a Ruger 9-millimeter pistol and an 1895 Russian revolver. Neither weapon was loaded, but the revolver had an odor that indicated to Officer Soule that it had been recently fired. Another officer arrived at the scene at 11:30 p.m., and collected several shell casings from the street and lawn in front of 1006 Fabus Drive.

On the following morning, September 13, 2009, Newport News Police Officer Brown recovered a bullet on the ground and a casing across the street from where Robinson had been shot. Juliana Price, a forensic scientist, testified that the casing and bullet collected by Officer Brown were fired from the 9-millimeter pistol found at Turner's grandmother's home.

At trial, Robinson testified that "Lamonte [Williams], Stan, 'Beal,' Josh [Butler]," and some other individuals were present the night he was shot. Robinson recalled that Turner was also present that night and spoke with Poindexter, but Turner was alone and probably there fifteen to twenty minutes before the shooting took place. Robinson also stated that he did not know Turner personally on the night of the shooting but that he knew of him. In addition, Robinson stated that he did not see the person that shot him, nor did he remember seeing anyone with a gun on that night.

Josh Butler ("Butler"), a fellow football player, testified that on the night Robinson was shot, someone walked by the group and greeted them, but he could not remember what the individual was wearing. Butler then acknowledged that he gave a statement to Newport News Police Detective Best regarding the shooting and that it was recorded. Butler then reviewed the transcript pages, but testified that his recollection was only "partially" refreshed. He testified

that he still did not remember what the individual was wearing when he approached the group, did not recall if he saw someone with a gun, and did not recall whether he saw Robinson being shot. However, he testified that the individual did not do anything unusual after he approached the group. The circuit court asked Butler if the transcript refreshed his memory with regard to what he told the police detective. Butler replied that he remembered having the conversation with the police detective, but the transcript only refreshed his memory as to the actual day the event happened. The circuit court then asked, "Okay. So you don't remember anything even though you gave a full statement to the police officer?" Butler answered, "I remember hearing the shots and I remember running." The circuit court asked, "Okay. But nothing else in that statement refreshes your memory?" Butler replied, "No, sir."

Donnell Staton ("Staton"), another football player and friend of Robinson's, testified that he was with Robinson on the night of September 12, 2009, and that he did not see Robinson being shot. The Commonwealth asked him if he recalled talking to Detective Best and giving her a recorded statement about what happened that night, and Staton replied that he did. The Commonwealth then asked him to read the transcript of the statement he gave, and if it refreshed his memory of that night. Staton replied that it did, and testified that he never saw someone shoot Robinson, but that he heard the shooting. He further testified that he saw another individual in the area wearing a "White T, [and] a pair of jeans" walk up to the group and talk to Poindexter. However, he did not know who the person was nor could he identify the person that he saw. The circuit court then asked Staton if the transcript refreshed his memory. Staton replied that it did, but he could not picture the person. Staton then testified that he saw "some guy with the white t" with a gun, but he did not see the gun fired. He further stated that the "white t" man was the same man that approached the group and had words with Poindexter.

The Commonwealth then called Poindexter to the stand to testify. Poindexter testified that he was with Robinson on the evening of September 12, 2009, and that he was on the same football team. He testified they were sitting talking near 22nd Street, he heard some shots just as they were about to leave, and they all ducked. He further stated that he did not see anyone with a gun that evening and that all he specifically remembered was hearing shots and everyone running. Poindexter identified Turner as his cousin, but stated he did not see Turner in the area of 22nd Street that evening, nor did Poindexter remember if anyone approached him that night.

The Commonwealth established that Poindexter remembered testifying at the preliminary hearing, and handed him a copy of the transcripts in order to refresh his memory. Poindexter responded that after reading the transcript, he still did not remember talking to Detective Best and giving her his statement. The Commonwealth then handed Poindexter a copy of the transcribed statement he gave to Detective Best. Poindexter read it, and replied that he was unable to recall what happened on that evening. Upon closer direct examination, Poindexter testified as follows:

| [Commonwealth] | Well, after having read that statement and your preliminary hearing transcript, do you recall what happened that evening? |
| --- | --- |
| [Poindexter] | No. |
| [Commonwealth] | Let me get this straight, you have no memory of what happened that evening? |
| [Poindexter] | Yeah. We were standing on the corner and a "fire" happened and we just ran. |
| [Commonwealth] | Okay. But it's your testimony that you no longer remember whether or not you saw someone shoot Mr. Robinson? |
| [Poindexter] | Can you say it again? |
| [Commonwealth] | Okay. You no longer remember whether or not you saw someone shoot Mr. Robinson? |

| [Poindexter] | No. |
| --- | --- |
| [Commonwealth] | Okay. You no longer remember whether or not you saw a gun that evening? |
| [Poindexter] | No. |
| [Commonwealth] | Okay. You no longer remember whether or not you saw anyone else in the area that evening other than the football players? |
| [Poindexter] | No. |
| [Commonwealth] | Okay. And after reading that preliminary hearing transcript and after reading the statement that you gave to Detective Best you still don't remember what happened that evening? |
| [Poindexter] | No. |

The Commonwealth then made a motion to admit the portion of the transcript of the October 30, 2009 preliminary hearing testimony containing Poindexter's testimony into evidence. Defense counsel objected to the admission of the transcript on the grounds that 1) the witness was not unavailable because he was present and testified, and the Commonwealth could have attempted to impeach Poindexter with his prior inconsistent statements, and 2) the transcript was not signed by the court reporter, and since he was not Turner's counsel at the preliminary hearing, he was not sure that what was transcribed was an accurate record of what was said at the hearing. The Commonwealth responded that the Commonwealth was not allowed to impeach its own witness, that the focus was on the unavailability of Poindexter's testimony, and not on his unavailability since he testified that he no longer remembered who shot Robinson, and that the Commonwealth had attempted to get an original copy of the transcript, but was unable to do so. The circuit court recessed in order for the Commonwealth to obtain an original copy of the transcript, and held that Poindexter was unavailable "because of his present lack of memory . . . ."

However, the Commonwealth was unable to obtain a certified copy of the transcript that satisfied Code § 19.2-165.[1] After another recess in order for the Commonwealth to locate the court reporter, the Commonwealth was unable to bring the court reporter into the circuit court to certify that the copy was a true and accurate representation of what she had transcribed. The Commonwealth then requested that the circuit court delay ruling on the preliminary hearing transcript because she stated, "I've got someone coming to court now who was at the preliminary hearing I expect to be able to testify as to what was said at the preliminary hearing." The circuit court ruled that at that time it was not going to accept the transcript since the Commonwealth had not obtained the required certification, and sustained Turner's counsel's objection to the entry of the transcript into evidence.

Ellis Butler then testified that he was present at the scene of the shooting on September 12, 2009. Ellis Butler stated that he saw Turner reach into his pocket, and then he heard the gunshots a short period later, after which everyone ran. He further testified that he saw Turner with a gun, and saw him shoot Robinson.

The Commonwealth subsequently called Keeley to the stand to testify, and he testified that he had previously represented Turner. Turner's counsel objected to Keeley's testimony on the grounds that Keeley still had "a duty or an obligation" to Turner regarding "anything that may have transpired and he would not be permitted to do anything that would be detrimental possibly to [] Turner" since he was Turner's prior counsel. The circuit court replied "Why couldn't he do that other than attorney/client privilege and any information conveyed to him pursuant to attorney/client privilege I agree with that." Turner's counsel responded, "Yes, sir." The circuit court then added, "I agree he cannot divulge any information even though he no

---

[1] "The transcript in any case certified by the reporter or other individual designated to report and record the trial shall be deemed prima facie a correct statement of the evidence and incidents of trial." Code § 19.2-165.

longer represents Mr. Turner based on attorney/client privilege. We don't know what's going to be said so you have to object as the question is asked because I'm not sure." The Commonwealth replied that she did not intend "to ask anything involving privilege." The circuit court again reiterated that Keeley could not "divulge anything that's of confidence or privileged information between the attorney and client."

Keeley then testified that he was present at the hearing and that the transcript of Poindexter's testimony was accurate to the best of his memory. Without looking at the transcript, he stated that Poindexter said that "he saw [] Turner with a gun shooting somebody," but Keeley could not remember the victim's name even though the victim had testified at the preliminary hearing. Turner's counsel then objected to the testimony on the grounds of hearsay specifically stating, "To the extent that the Commonwealth is trying to use [] Keeley to say that it was certain things said by a witness different at the preliminary hearing than what they said here in the trial today. [] Ke[e]ley's recitation of that, the statement that he made, would be hearsay." The circuit court agreed that it was hearsay, but overruled the objection as it found the information was an exception to the hearsay rule based on prior testimony of an unavailable witness. The circuit court, citing to several Virginia cases, set forth that the witness was unavailable and had testified under oath, the issues were substantially the same, the party against whom the hearsay was being offered was a party in the trial, and the witness that was testifying as to what was said at the former trial was able to do so with reasonable accuracy.

Thereafter, Keeley testified that he recalled the victim testified at the preliminary hearing, and the other witness who also testified at the preliminary hearing identified Turner as the individual who shot the victim. Keeley then stated, after referring to the transcript, that the second witness identified Turner by name and that Turner was the individual that shot Robinson. Keeley also testified that the transcript was correct to the best of his recollection. On

cross-examination, Keeley admitted that he did not have any notes with him that he used to testify and that he was relying on the transcript. Keeley also admitted that he had probably tried a couple hundred cases since the preliminary hearing, but that the transcript "sounds right." He stated further that he did not really remember the case and that his recollection of the case was "fuzzy."

On redirect, Keeley testified that he recalled having the preliminary hearing, that there were two individuals who testified, and that the second witness testified that Turner was the one who shot the other person. However, he stated that he was "fuzzy" about the names and faces of the individuals, but that the transcript helped refresh his recollection that Poindexter was the second witness. On recross, Keeley agreed that he did not have any independent recollection of what Poindexter looked like, and he would not be able to pick him out of a lineup. The circuit court then asked Keeley if he was present when Poindexter was sworn in and testified under oath. Keeley responded that he was and that Poindexter had testified that his name was "Eric Poindexter."

The Commonwealth and Turner rested after Keeley's testimony, and the circuit court found Turner guilty of aggravated malicious wounding, and use or display of a firearm during the commission of a felony. This appeal followed.

II. ANALYSIS

On appeal, Turner alleges that the circuit court erred in permitting Keeley, Turner's defense counsel at the preliminary hearing, to testify as a witness against Turner at his trial. Specifically, Turner asserts that the circuit court erred in ruling that 1) Poindexter was unavailable when he "merely testified at trial differently than the Commonwealth expected"; 2) Keeley owed no ongoing duty or obligation of loyalty to Turner "not to undermine his interests by testifying as a prosecution witness at the trial of the former client"; 3) it was not

hearsay for Keeley to testify as to what Poindexter said at the preliminary hearing[2]; and 4) that Keeley could testify about what Poindexter said at the preliminary hearing when Keeley had no independent recollection of the specifics of Poindexter's testimony and relied on the contents of an inadmissible transcript of the preliminary hearing to refresh his memory. In addition, Turner alleges that the error was not harmless because the trial court "evidently" relied on the unreliable hearsay as substantive proof that Turner was the individual who shot Robinson.

A. Standard of Review

"Generally, the admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion." Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010) (citing Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

In reviewing the unavailability of a witness, "'[i]t is well settled that the sufficiency of the proof to establish the unavailability of a witness is largely within the discretion of the trial court, and, in the absence of a showing that such discretion has been abused, will not be interfered with on appeal.'" Doan v. Commonwealth, 15 Va. App. 87, 102, 422 S.E.2d 398, 406 (1992) (quoting Burton v. Oldfield, 195 Va. 544, 550, 79 S.E.2d 660, 665 (1954)). Thus, "'[w]e review the trial court's determination of unavailability of a witness for the purpose of establishing admissibility of prior sworn testimony utilizing an abuse of discretion standard.'" Harris v. Commonwealth, 52 Va. App. 735, 747, 667 S.E.2d 809, 815 (2008) (quoting Sapp v. Commonwealth, 263 Va. 415, 423, 559 S.E.2d 645, 649 (2002)). "'The party offering the

---

[2] The circuit court did not rule that the evidence was not hearsay. Rather, it ruled that the evidence was hearsay, but that it fell within the exception for the prior testimony of an unavailable witness.

testimony bears the burden of establishing the witness' unavailability.'" Id. at 747-48, 667 S.E.2d at 815 (quoting Bennett v. Commonwealth, 33 Va. App. 335, 347, 533 S.E.2d 22, 28 (2000) (en banc)).

### B.  "Unavailability" of the Witness

Turner contends that the circuit court erred in ruling Poindexter was unavailable when he "merely testified at trial differently than the Commonwealth expected."

"'Testimony given at a former trial is admissible in evidence as an exception to the hearsay rule if certain requirements are met . . . .'" Doan, 15 Va. App. at 100, 422 S.E.2d at 405 (quoting Charles E. Friend, The Law of Evidence in Virginia § 232 (3d ed. 1988)).

> "Such testimony is not open to the objections ordinarily urged against hearsay, because it has been delivered under the sanction of an oath and subject to the right of the adverse party to cross-examine the witness giving it.  It is admitted on the principle that it is the best of which the case admits."

Id. at 100 n.7, 422 S.E.2d at 405 n.7 (quoting Burton, 195 Va. at 549, 79 S.E.2d at 664).

The Virginia Supreme Court has held the requirements for this exception are as follows:

> "[p]reliminary hearing testimony of a witness who is absent at a subsequent criminal trial may be admitted into evidence if the following conditions are satisfied:  (1) that the witness is presently unavailable; (2) that the prior testimony of the witness was given under oath (or in a form of affirmation that is legally sufficient); (3) that the prior testimony was accurately recorded or that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and (4) that the party against whom the prior testimony is offered was present, and represented by counsel, at the preliminary hearing and was afforded the opportunity of cross-examination when the witness testified at the preliminary hearing."

Sapp, 263 Va. at 423, 559 S.E.2d at 649 (quoting Longshore v. Commonwealth, 260 Va. 3, 3-4, 530 S.E.2d 146, 146 (2000)).

"[A] witness' 'unavailability' is established if the court is satisfied that a 'sufficient reason is shown why the original witness is not produced.'" Jones v. Commonwealth, 22 Va. App. 46, 51, 467 S.E.2d 841, 844 (1996) (quoting Doan, 15 Va. App. at 100, 422 S.E.2d at 405). "Although the focus of the inquiry is often directed to the absence of a witness, the analysis also applies to circumstances when the witness is present, but for sufficient reasons the witness's *testimony* is 'unavailable.'" Sapp, 263 Va. at 424, 559 S.E.2d at 649 (emphasis added). "In [cases where the individual appears in court and testifies that he presently lacks memory and thus is 'unavailable,'] *the focus of the inquiry is not the unavailability of the witness but the unavailability of the testimony*." Jones, 22 Va. App. at 52, 467 S.E.2d at 844 (emphasis added) (citations omitted).

> When lack of memory is legitimate and refreshing of memory is not efficacious, judicial pressure to testify may result in untrustworthy testimony. However, the bona fides of a claim of loss of memory must be tested. The subject matter of lost memory must be established because a witness may have recollection of some matters and not of others. Lack of memory relates to capacity to testify. Feigned lack of memory is nothing more than refusal to testify which should be met with an order of the trial court to testify and careful consideration of utilization of contempt powers as a sanction against continued refusal. Of course, the trial court is in a unique position to evaluate the demeanor of the witness, and after proper inquiry, the decision of the trial court is entitled to great deference. Upon persistent refusal to testify despite judicial pressures and an order to testify, or demonstrated bona fide lack of memory, the testimony of a witness may be declared unavailable and prior testimony may be admitted, provided that the additional evidentiary foundations . . . are met.

Sapp, 263 Va. at 427, 559 S.E.2d at 651.

The witnesses in Sapp both declined to testify once they were on the stand. The first witness refused to testify on the ground that he was scared to testify because he had received verbal threats even though he remembered what happened. Id. at 418-19, 559 S.E.2d at 647. The second witness refused to testify on the basis that he did not feel safe, he forgot a lot of the

- 12 -

things he testified to at the preliminary hearing even though he was telling the truth at the hearing, and he did not want to testify even if the Commonwealth refreshed his memory. Id. at 420-21, 559 S.E.2d at 647-48. However, the Supreme Court of Virginia held that the trial court did not exert any "appropriate judicial pressure" to test the resolve of the witnesses. Rather, the trial court assured the witnesses that nothing would happen to them if they refused to testify and that their prior testimony would be utilized instead. Id. at 426-27, 559 S.E.2d at 651.

In Jones, this Court addressed for the first time whether a witness' lack of memory renders him "unavailable," and held that the trial court did not abuse its discretion "in finding that [the witness'] memory loss at trial, whether real or feigned, rendered him unavailable." 22 Va. App. at 52, 467 S.E.2d at 844. In that case, the witness had testified as an eyewitness to the crime at the preliminary hearing. Id. at 49, 467 S.E.2d at 842. However, at trial, the witness claimed that he did not remember the incident, that he did not remember speaking with the police or testifying at the preliminary hearing, that he did not know the defendant, and further that he had no memory of the events leading to the victim's death. Id. at 49, 467 S.E.2d at 843. The trial court found that the witness was unavailable because of his inability to remember his preliminary hearing testimony, and it allowed his preliminary testimony to be read into the record to impeach the witness and as substantive evidence of the defendant's guilt. Id. at 49-50, 467 S.E.2d at 843. On appeal, this Court affirmed the trial court noting that despite the Commonwealth's repeated questions, its attempts to refresh the witness' memory, and its grant of immunity, the witness still refused to testify. Id. at 52, 467 S.E.2d at 844. This Court specifically concluded, "although [the witness] appeared in court and testified to his present lack of memory, he was 'unavailable' for purposes of the exception." Id.

As was the case in Jones, the witness in the present case testified that he no longer remembered facts that he had previously testified to despite efforts by the prosecutor to permit

the witness to refresh his recollection. Poindexter testified that he was there on the night of September 12, 2009, and he remembered hearing some shots and everyone ducking and running. However, he also testified that he did not see anyone with a gun that evening, that no one else came up to talk to him that evening, and that Turner was not in that area on that evening. Poindexter then stated that he remembered talking to Detective Best and testifying at the preliminary hearing under oath. However, after reading the transcripts from both the conversation with Detective Best and the preliminary hearing, he stated that he did not remember what happened that evening. Upon further questioning from the Commonwealth regarding his specific memory of that evening, Poindexter testified that the only thing he remembered was standing on the corner when he heard the shots and everyone running; but he stated that he did not remember whether he saw someone shoot Robinson, whether he saw a gun that evening, or whether anyone else was in the area that night in addition to the football players.

While Turner alleges that Poindexter was not unavailable but had merely testified differently than the Commonwealth expected, the record does not support that assertion. Poindexter did not give conflicting testimony. He testified that he could not remember when asked about the specifics of information he had testified about in detail on an earlier occasion. Thus, given the Commonwealth's repeated questions that Poindexter had answered in detail on an earlier occasion, its unsuccessful attempts to refresh his memory based on his prior testimony given under oath at the preliminary hearing, and his continual response that he no longer remembered various facts previously testified to, his testimony was "unavailable" for the purpose of satisfying the requirements of Sapp. Thus, although Poindexter was present in court and testified to the extent that he did remember, the circuit court did not abuse its discretion in finding him "unavailable" with respect to that portion of his earlier testimony, which he could not then recall.

C.  Admissibility of the Evidence

1.  Duty or Obligation of Loyalty

Turner also contends that the trial court erred in ruling that Keeley owed no ongoing duty or obligation of loyalty to Turner, his former client, not to undermine Turner's interests by testifying as a prosecution witness.

a.  Waiver

The Commonwealth alleges that Turner waived this argument pursuant to Rule 5A:18. The basis for the Commonwealth's assertion is that Turner's counsel did not clarify the objection he made regarding Keeley's duty of loyalty and that he did not clarify his objection when the circuit court construed his objection to be focused primarily upon the attorney-client privilege.

Rule 5A:18 stated[3]:  "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."  "Not just any objection will do.  It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." Thomas, 44 Va. App. at 750, 607 S.E.2d at 742 (emphasis in original).  "[T]he main purpose of the rule is to ensure the trial court can 'consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.'"  Kovalaske v. Commonwealth, 56 Va. App. 224, 230, 692 S.E.2d 641, 645 (2010) (quoting Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992)).

---

[3] Effective July 1, 2010, Rule 5A:18 was revised to state that, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."  Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

In the present case, Turner's counsel specifically objected to Keeley's testimony at trial as follows, "I think [Keeley] still would have a duty or an obligation to [] Turner as his prior counsel with regards to anything that may have transpired and he would not be permitted to do anything that would be detrimental possibly to [] Turner." In response, the circuit court stated, "Why couldn't he do that other than attorney/client privilege and any information conveyed to him pursuant to attorney/client privilege I agree with that." Turner's counsel then replied, "Yes, sir." In an attempt to be clear, the circuit court again stated, "I agree [Keeley] cannot divulge any information even though he no longer represents Mr. Turner based on attorney/client privilege. We don't know what's going to be said so you have to object as the question is asked because I'm not sure." The Commonwealth replied that she did not intend to ask anything involving privilege. The circuit court again reiterated that "I agree with [Turner's counsel] if that's the argument that you cannot divulge anything that's of confidence or privileged information between the attorney and client."

The record establishes that Turner's counsel objected to the admissibility of Keeley's testimony on the basis of the duty and obligation that Turner's prior counsel owed him regarding anything that transpired during his representation of Turner. Thus, Turner's counsel's objection was specific and timely, and the issue is preserved for appellate consideration.

b. The Applicability of the Duty or Obligation of Loyalty

Turner cites to Rules 1.6 and 1.9 of the Virginia Rules of Professional Conduct in support of his contention that the circuit court "erred in concluding that there was nothing improper about a lawyer testifying as a prosecution witness against a former client."[4]

---

[4] At trial, Turner's counsel also objected on the basis of attorney/client privilege, and the circuit court upheld his objection on that basis. In addition, Turner's counsel conceded at oral argument before this Court that the testimony at issue in this case did not involve information falling within the attorney/client privilege, but was rather information obtained during the course of representation. Thus, we do not address attorney/client privilege.

Rule 1.6(a) provides in relevant part,

> A lawyer shall not reveal information protected by the attorney-client privilege under applicable law *or other information gained in the professional relationship* that the client has requested be held inviolate *or the disclosure of which would be embarrassing or would be likely to be detrimental to the client* unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).

(Emphasis added). Comment 3 to Rule 1.6 further clarifies that,

> The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. *The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.* The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information protected by the attorney-client privilege under applicable law *or other information gained in the professional relationship* that the client has requested be held inviolate or *the disclosure of which would be embarrassing or would be likely to be detrimental to the client, whatever its source*. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.

(Emphasis added).[5]

---

[5] The mere fact that Keeley testified regarding what occurred during his representation of Turner in another forum does not mean it affected the duty or obligation of loyalty he owed to Turner. As Comment 3 to Rule 1.6 notes, the attorney/client privilege applies "in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence *concerning a client*," whereas the rule of client-lawyer "confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law." (Emphasis added). Moreover, the attorney/client privilege is an evidentiary privilege that protects the relationship from invasion by the courts, and the client-lawyer confidentiality rule regulates the conduct of the attorney admitted to, and regulated by, the bar and relates only to the relationship itself. See Code § 8.01-420.7 (attorney/client privilege and work product protection). As previously noted, Turner's counsel does not argue, and in fact conceded at oral argument, that the attorney/client privilege is not at issue in this case. Therefore, we address

Rule 1.9(c) provides as follows:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) *use information* relating to or *gained in the course of the representation to the disadvantage of the former client* except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, *or when the information has become generally known*; or
>
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

(Emphasis added). Comment 8 to Rule 1.9 states,

> Information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using non-confidential information about that client when later representing another client.

As the Commonwealth alleges, this issue has not been specifically addressed in Virginia. Turner cites to three federal cases in support of his proposition that a lawyer violates his duty of loyalty to a client "when counsel acts more for the benefit of, and with more apparent sympathy toward, the prosecution than the client he is defending." Fisher v. Gibson, 282 F.3d 1283, 1291 (10th Cir. 2002); see Osborn v. Shillinger, 861 F.2d 612 (10th Cir. 1988); Fullwood v. Lee, 290 F.3d 663 (4th Cir. 2002). However, Turner's reliance on these federal habeas corpus opinions is misplaced.

In Fisher, the Tenth Circuit Court of Appeals addressed a client's Sixth Amendment right to "effective assistance of counsel" that "also requires that an attorney adhere to his duty of undivided loyalty to his client." 282 F.3d at 1290-91 (citing Strickland v. Washington, 466 U.S. 668, 692 (1984)). Thus, the court analyzed the duty of loyalty within the context of effective

---

whether Keeley violated the duty or obligation of loyalty he owed to Turner when he testified at trial.

assistance of counsel and third-party conflicts of interest, and not in the context of a defendant's former counsel testifying allegedly to his detriment in violation of his duty of loyalty. In Fullwood, the Fourth Circuit Court of Appeals also addressed a client's Sixth Amendment right to effective assistance of counsel, and stated, "an attorney whose loyalties are so conflicted that he or she is no longer 'functioning as the counsel guaranteed the defendant by the Sixth Amendment' renders ineffective assistance." 290 F.3d at 689 (quoting Strickland, 466 U.S. at 687). Just as in Fisher, the court in Fullwood addressed the duty of loyalty within the context of effective assistance of counsel and conflict of interest. Moreover, the Tenth Circuit Court of Appeals in Osborn also addressed the duty of loyalty within the context of the Sixth Amendment right to effective assistance of counsel through an adversarial proceeding. 861 F.2d at 625-29.

The Commonwealth cites to State v. Davis, 911 A.2d 753 (Conn. App. Ct. 2006), and Ziebell v. State, 788 N.E.2d 902 (Ind. Ct. App. 2003), for support that the trial court did not err in admitting Keeley's testimony because it did not include confidential information or secrets, nor did it involve matters of attorney/client privilege. While both Davis and Ziebell involved objections on the basis of attorney/client privilege, the courts upheld the admissibility of the testimony so long as the subject of the testimony was not confidential information.

In Davis, the defendant argued that the trial court erred in admitting the testimony of his former attorney at trial in violation of the attorney/client privilege. 911 A.2d at 769. At trial, the defendant's former counsel testified that he had represented the defendant in a criminal matter in 2001 and that he had learned at a pretrial conference that the trial was scheduled to begin on October 9, 2001, which information he conveyed to the defendant. Id. The Appellate Court of Connecticut held that an attorney's communication with his or her client regarding a trial date was not privileged information falling within the scope of attorney/client privilege and that the

circuit court did not abuse its discretion by admitting the defendant's former defense attorney's testimony.  Id. at 770.  In reaching its holding, the court cited the following general rule:

> "[c]ommunications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. *. . . A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice*."

911 A.2d at 771 (emphasis and alterations in original) (citation omitted).

The Court of Appeals in Indiana reached a similar conclusion in Ziebell.  The defendant in that case alleged that the circuit court erred in permitting the defendant's prior counsel to testify regarding his identity during the habitual offender phase of the trial based on the attorney/client privilege.  788 N.E.2d at 906-07, 912.  However, the former attorney in Ziebell only testified regarding the defendant's identity for the purpose of establishing his prior convictions.  Id. at 912.  Therefore, the court held that the former counsel did not reveal any confidential communications or secrets, and thus the trial court did not abuse its discretion by permitting the former counsel to testify.  Id. at 912-13.

In this case, we find that the circuit court did not abuse its discretion by permitting Keeley to testify regarding information that was not obtained confidentially from Turner.  Neither Rule 1.6 nor 1.9 prohibits a lawyer from testifying in court regarding what occurred at a former public court proceeding when such testimony does not involve communications solely between an attorney and his client and the testimony concerns information that has become generally known.  The Commonwealth only sought to elicit events and information conveyed by Poindexter at a prior public court proceeding, and did not seek to have any information disclosed that was privileged or uniquely related to Keeley's representation of Turner.  Specifically, Keeley's testimony in this case did not involve any confidential information or secrets that he obtained "in the course of the representation" or "relating to the representation," Rule 1.9, nor

was it "gained in the professional relationship" or if disclosed "would be embarrassing or would be likely to be detrimental to the client," Rule 1.6. Rather, Keeley's testimony was limited to events he witnessed while he was Turner's counsel that occurred at the preliminary hearing in the general district court, which was open to the public, and entailed the prior testimony of a sworn witness that was disclosed publicly to all those present at the preliminary hearing.

Thus, even assuming without deciding that a rule of professional conduct would operate as a rule of evidence, once the information became generally known at a public hearing, Keeley violated no rule of professional conduct when he testified regarding information previously publicly relayed and generally known. In addition, the information did not involve matters that Turner requested his counsel hold confidential or that could be held confidential since it was the testimony of a witness, not Keeley's client, given under oath at a prior public court proceeding. For these reasons, we hold that the circuit court did not err in ruling that Keeley could testify regarding Poindexter's prior sworn testimony.

## 2. Hearsay

Turner further alleges that the circuit court erred in admitting Keeley's hearsay testimony into evidence when he had no independent recollection of Poindexter's testimony and relied on the unauthenticated transcript of his testimony. Specifically, Turner is alleging that Keeley's testimony is inadmissible hearsay as prior sworn testimony because it did not meet the third requirement of the exception – "'that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail . . . .'" Sapp, 263 Va. at 423, 559 S.E.2d at 649 (quoting Longshore, 260 Va. at 3-4, 530 S.E.2d at 146).

- 21 -

### a. Procedural Default

The Commonwealth alleges that Turner did not object to Keeley's testimony on this ground at trial, and thus he cannot rely on that basis for the first time on appeal. Rule 5A:18 provided at the time that, "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." Thomas, 44 Va. App. at 750, 607 S.E.2d at 742.

At trial, Turner's counsel initially objected to Keeley's testimony on the grounds that he owed Turner a duty or obligation not to do anything that would be detrimental to Turner. However, Turner's counsel then specifically objected as follows: "I would only object to the hearsay portion of [Keeley's testimony] to the extent that it's being offered for the truthfulness that this is what these people said on those days." The circuit court responded that it agreed that the testimony was hearsay. Turner's counsel then explained, "To the extent that the Commonwealth is trying to use [] Keeley to say that it was certain things said by a witness different at the preliminary hearing than what they said here in the trial today. [] Ke[e]ley's recitation of that, the statements that he made, would be hearsay." The circuit court overruled his objection finding that the testimony was an exception to the hearsay rule because it was prior testimony of an unavailable witness. The circuit court specifically stated that the witness was unavailable and had testified under oath in trial, the issues were substantially the same, the party against whom the hearsay testimony is being offered was a party in the trial, and the witness testifying regarding what was said at the former trial was able to do so with reasonable accuracy.

Thus, the record establishes that Turner's counsel objected on hearsay grounds to the admissibility of Keeley's testimony as to what Poindexter testified at the preliminary hearing, and this issue is also preserved for appellate consideration.

### b.  The "Clarity and Detail" Requirement of Sapp

As noted above, the third requirement for the admissibility of hearsay as prior sworn testimony requires, "'that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail . . . .'" Sapp, 263 Va. at 423, 559 S.E.2d at 649 (quoting Longshore, 260 Va. at 3-4, 530 S.E.2d at 146).

In this case, the circuit court did not abuse its discretion in finding that Keeley was able to testify with reasonable accuracy.  Keeley testified that he recalled that two witnesses testified at the preliminary hearing, the victim and the other witness who identified Turner as the individual who shot the victim.  After refreshing his recollection from the transcript, Keeley stated that the second witness identified Turner by name and that Turner was the individual that shot Robinson.  Keeley also testified that the transcript was accurate to the best of his recollection.  On cross-examination, Keeley admitted that he did not have any notes with him that he used to testify and that he was relying on the transcript to refresh his recollection.[6] Keeley also admitted that he had probably tried a couple hundred cases since the preliminary hearing, but that the transcript "sounds right."  He stated further that he did not really remember the case and that his recollection of this case was "fuzzy."

---

[6] In Virginia, counsel is permitted to "refresh [a] witness's memory by allowing the witness to examine material, usually writings, which relate to the incident in question."  Charles E. Friend, The Law of Evidence in Virginia § 3-7, at 104 (6th ed. 2003).  "Any material which actually stimulates or revives the witness's memory may be used.  It is not limited to writings, and may consist of anything which in fact stimulates memory.  It makes no difference whether the material was prepared by the witness or by some other person, and it may be an original, a copy, or an extract."  Id. § 3-7(a), at 105.

However, he testified on redirect that he recalled the preliminary hearing, that there were two individuals who testified, and that the second witness testified that Turner was the one who shot the other person. While he stated that he was "fuzzy" about the names and faces of the individuals, he stated that the transcript helped refresh his recollection that Poindexter was the second witness. On recross, Keeley agreed that he did not have any independent recollection of what Poindexter looked like and that he would not be able to pick him out of a lineup. The circuit court then asked Keeley if he was present when Poindexter was sworn in and testified under oath. Keeley responded that he was and that Poindexter had testified that his name was "Eric Poindexter."

Thus, while he testified that he was "fuzzy" on the names and faces, Keeley had specific recollection of those portions of Poindexter's prior testimony that Poindexter could not recall that he was able to convey with reasonable accuracy. Accordingly, the circuit court did not abuse its discretion in finding that Keeley testified "with reasonable accuracy."

### D. Harmless Error

Lastly, Turner alleges that the contended errors were not harmless because the circuit court "evidently relied on the unreliable hearsay as substantive proof that Turner actually shot Robinson." However, as we find the circuit court did not err, no harmless error analysis is necessary.

Affirmed.

- 24 -