PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette and Mims, JJ., and Lacy and Koontz, S.JJ.

MARIO LAMAR TURNER

OPINION BY
v.    Record No. 111563          JUSTICE WILLIAM C. MIMS
                                 JUNE 7, 2012
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the circuit court properly held that a witness was unavailable to testify under the criteria established in Sapp v. Commonwealth, 263 Va. 415, 559 S.E.2d 645 (2002).

I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Darnell Robinson was standing with a group of friends and high school football teammates when he was shot several times on the evening of September 12, 2009.  The group included Robinson, Eric Poindexter, Ellis Butler ("Ellis"), Josh Butler ("Josh"), and Donnell Staton.  Police recovered a 9-millimeter bullet and shell casing from the scene of the shooting.  Forensic analysis later established that they were fired from a Ruger pistol recovered from the home of Mario Lamar Turner's grandmother.

Turner was subsequently indicted on one count each of aggravated malicious wounding, in violation of Code § 18.2-51.2, and use of a firearm during an aggravated malicious wounding, in violation of Code § 18.2-53.1.  He was represented

at his preliminary hearing by Brian P. Keeley, though Keeley subsequently withdrew and new counsel was substituted prior to trial. Turner was tried in a bench trial in the Circuit Court of the City of Newport News on May 4, 2010. At trial, Robinson testified that the group encountered Turner, who spoke with Poindexter, 15 to 20 minutes before the shooting. Robinson knew of Turner but did not have a personal acquaintance with him. Robinson did not see who shot him. He did not remember what Turner wore and did not remember seeing anyone with a gun.

Ellis testified that he too saw Turner that night. Ellis had only heard Turner's name and had never seen Turner before that night. Ellis saw Turner reach into his pocket shortly before shots rang out. Ellis did not remember where Turner was at the time of the shooting and was not sure what Turner had pulled from his pocket. On cross-examination, Turner questioned Ellis about his statement to police on the night of the shooting. Ellis confirmed that he had told police both that he could not identify the shooter and that he had not seen Turner shoot Robinson. Thereafter, during the course of antagonistic questioning, Ellis said he had seen Turner shoot Robinson:

> Q: I'm asking you did you see Mr. Turner shoot Mr. Robinson?
>
> A: It's possible.

2

Q: Well, is it possible that you saw him or did you or did you not? It's a yes or no question.

A: Yes.

Q: You saw him shoot him?

A: Yep.

Q: Did you see Mr. Turner with a gun?

A: What do you mean?

Q: Did you see him with a gun?

A: Yep.

Q: What kind of gun did he have?

A: I'm not sure.

Q: Well, you said you saw him with a gun. Was it a big gun, old gun? Was it a revolver, was it an automatic, what was it?

A: It was the kind that shoots.

Josh also testified that someone walked by the group and greeted them, but he did not know the person and could not remember how the person was dressed:

Q: Do you remember what [Turner] was wearing?

A: No, I don't remember.

The Commonwealth established that Josh had given a recorded statement to the police and provided him a copy of it. He read the statement but said he still could not remember:

Q: Do you remember what [Turner] was wearing?

3

        A:    At this point I cannot tell you.  I don't
              remember.

                            . . . .

        Q:    Do you recall whether or not you saw anyone
              with a gun?

        A:    No, ma'am.

        Q:    Do you recall whether or not you saw Mr.
              Robinson being shot?

        A:    No, ma'am.

At the conclusion of Josh's testimony, the circuit court

questioned him about his loss of memory:

        Q:    All right.  Let me understand, young man.
              After reviewing the statement that you gave
              to the police detective[,] that does not
              refresh your memory as to what you told the
              detective on that date?

        A:    I do not remember.

        Q:    You don't remember anything?

        A:    I remember having the conversation but the
              only thing that was refreshed was, like,
              the actual day that it happened.

        Q:    Okay.

        A:    Like sitting down and all that.

        Q:    Okay.  So you don't remember anything even
              though you gave a full statement to the
              police officer?

        A:    I remember hearing the shots and I remember
              running.

        Q:    Okay.  But nothing else in that statement
              refreshes your memory?

                              4

A:  No, sir.

Q:  Okay.  Thank you.

Staton similarly testified that someone he did not know approached the group and spoke with Poindexter before the shooting. He also testified that he had seen someone wearing a white t-shirt and jeans with a gun in the area at the time of the shooting, but could not identify him:

Q:  Would you be able to identify the person
    that you saw in the area that evening?

A:  No, I can't even remember.

The Commonwealth established that Staton, too, had given a recorded statement to police and provided him with a copy of it, which he read.  The court also questioned him following his testimony:

Q:  Young man, you reviewed the statement as
    shown to you by the Commonwealth['s]
    Attorney, correct, to refresh your memory?

A:  Yes, sir.

Q:  That was the statement you gave to the
    police officer, correct?

A:  Yes, sir.

Q:  But it does not refresh your memory today?

A:  It refreshes my memory but I can't picture
    the person.

Q:  Okay.  Thank you.

Poindexter testified that he knew Turner because they were cousins. However, he said he had not seen Turner on the night of the shooting:

Q:  [D]id you see Mr. Turner in that area of 22nd Street that night?

A:  No, ma'am.

Q:  Mr. Poindexter, do you remember if anyone approached you that night?

A:  No, ma'am.

The Commonwealth established that Poindexter had testified under oath during Turner's preliminary hearing and provided Poindexter with a transcript of his testimony, which he read. It also established that, like the other witnesses, he had given a recorded statement to police and provided him with a copy of it, which he read. It then attempted to continue its examination:

Q:  Well, after having read that statement and your preliminary hearing transcript, do you recall what happened that evening?

A:  No.

Q:  Let me get this straight, you have no memory of what happened that evening?

A:  Yeah.  We were standing on the corner and a "fire" happened and we just ran.

                    . . . .

Q:  Okay.  You no longer remember whether or not you saw someone shoot Mr. Robinson?

6

```
A:   No.

Q:   Okay.  You no longer remember whether or
     not you saw a gun that evening?

A:   No.

Q:   Okay.  You no longer remember whether or
     not you saw anyone else in the area that
     evening other than the football players?

A:   No.

Q:   Okay.  And after reading that preliminary
     hearing transcript and after reading that
     statement that you gave . . . you still
     don't remember what happened that evening?

A:   No.
```

Although it had questioned Josh and Staton regarding their claimed loss of memory, the court did not likewise question Poindexter.  Rather, it merely thanked him and directed him to return to the witness room.

The Commonwealth thereafter moved that the court declare Poindexter unavailable as a witness and admit the transcript of his preliminary hearing testimony.  Turner objected that the transcript had not been certified by the court reporter.  He also objected that Poindexter was not unavailable; to the contrary, he was available and had in fact testified.  The Commonwealth responded that the question went to the unavailability of the testimony, not of the witness.

The court, relying on the Court of Appeals' decision in Jones v. Commonwealth, 22 Va. App. 46, 467 S.E.2d 841 (1996),

found Poindexter unavailable and ruled that it would admit the preliminary hearing transcript if the Commonwealth produced a certified copy. After a recess, the Commonwealth reported that it was unable to locate a certified copy or the court reporter who transcribed the preliminary hearing. The court then sustained Turner's objection to admitting it.

After the court ruled that the transcript could not be admitted, the Commonwealth called Keeley, Turner's counsel at the hearing, to testify about Poindexter's testimony. Turner objected that although Keeley no longer represented him, Keeley owed continuing duties to him and should not be permitted to testify. The court ruled that it would not permit Keeley to testify to anything encompassed by the attorney-client privilege but permitted him to testify about Poindexter's public testimony at the preliminary hearing. Keeley testified that the transcript accurately reflected Poindexter's testimony and that Poindexter had testified that he had seen Turner shoot someone with a gun, though Keeley could not recall the name of the victim.

Turner objected that Keeley's testimony was inadmissible hearsay. The court overruled the objection on the ground that Keeley's testimony merely provided the testimony of Poindexter, whom the court had already found to be unavailable.

8

Turner thereafter was convicted on both charges in the indictment. He appealed to the Court of Appeals, asserting among other things that the circuit court had erred by finding Poindexter to be unavailable and allowing Keeley to testify despite his ongoing duties to Poindexter. He also asserted that Keeley's testimony was based on the inadmissible transcript rather than his independent recollection of the preliminary hearing. The Court of Appeals affirmed Turner's convictions, Turner v. Commonwealth, 58 Va. App. 567, 570, 712 S.E.2d 28, 30 (2011), and we awarded Turner this appeal.

## II. ANALYSIS

The threshold issue is whether the Court of Appeals erred in affirming the circuit court's ruling that Poindexter was an unavailable witness. A circuit court's ruling that a witness is unavailable is reviewed for abuse of discretion. Sapp, 263 Va. at 423-24, 559 S.E.2d at 649. A court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (internal quotation marks and citation omitted).

9

We have recognized an exception to the hearsay rule allowing an absent witness's preliminary hearing testimony to be admitted into evidence at a subsequent trial if the following conditions are satisfied:

> (1) that the witness is presently unavailable; (2) that the prior testimony of the witness was given under oath (or in a form of affirmation that is legally sufficient); (3) that the prior testimony was accurately recorded or that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and (4) that the party against whom the prior testimony is offered was present, and represented by counsel, at the preliminary hearing and was afforded the opportunity of cross-examination when the witness testified at the preliminary hearing.

Sapp, 263 Va. at 423, 559 S.E.2d at 649 (quoting Longshore v. Commonwealth, 260 Va. 3, 3-4, 530 S.E.2d 146, 146 (2000)); see also Virginia Rule of Evidence 2:804(b)(1) (enacted by 2012 Acts chs. 688, 708).

In Jones, the Court of Appeals held that unavailability of a witness's testimony because of a lack of memory at trial is the functional equivalent of the unavailability of the witness himself under the first prong of the exception: "although [the witness] appeared in court and testified to his present lack of memory, he was 'unavailable' for purposes of the exception. In such cases, the focus of the inquiry is not the unavailability

10

of the witness but the unavailability of the testimony."  22

Va. App. at 52, 467 S.E.2d at 844.

We echoed the Court of Appeals' analysis in Sapp.  263 Va.

at 424, 550 S.E.2d at 649 ("Although the focus of the inquiry

is often directed to the absence of a witness, the analysis

also applies to circumstances when the witness is present, but

for sufficient reasons the witness's testimony is

'unavailable.' ").  However, we also enunciated limiting

principles to ensure that the witness is not merely attempting

to avoid his duty to testify.  Specifically, we stated that

> the bona fides of a claim of loss of memory must
> be tested.  The subject matter of lost memory
> must be established because a witness may have
> recollection of some matters and not of others.
> Lack of memory relates to the capacity to
> testify.  Feigned lack of memory is nothing more
> than refusal to testify which should be met with
> an order of the trial court to testify and
> careful consideration of utilization of contempt
> powers as a sanction against continued refusal.
> Of course, the trial court is in a unique
> position to evaluate the demeanor of the
> witness, and after proper inquiry, the decision
> of the trial court is entitled to great
> deference.  Upon persistent refusal to testify
> despite judicial pressures and an order to
> testify, or demonstrated bona fide lack of
> memory, the testimony of a witness may be
> declared unavailable and prior testimony may be
> admitted, provided that additional evidentiary
> foundations, not at issue in this case, are met.

Id. at 427, 559 S.E.2d at 651 (emphasis added) (footnote

omitted).

11

Thus, after Sapp, a circuit court may not rely on the bare assertion of a witness that he is unable to answer when examined at trial because he no longer remembers what occurred. Rather, the court has an obligation to explore the claim reasonably to ensure that the witness has not feigned his loss of memory in an attempt to evade the obligation of testifying. The court must satisfy itself that the loss of memory is genuine by conducting an inquiry and observing the demeanor of the witness as it does so.[1] Only then can it assess the authenticity of the witness's claim and only then is its assessment entitled to deference.

In this case, the court conducted no inquiry into Poindexter's claim of memory loss.[2] In the absence of such an inquiry, the court had no basis for determining the

_____

[1] Evaluating whether memory loss is real or feigned is crucial because it determines how the court should proceed with the witness. As we noted in Sapp, feigned loss of memory is nothing more than a refusal to testify and "refusal to testify should be met with an order . . . directing the witness to testify. Although use of contempt powers is clearly subject to the discretion of the trial court, a contempt order in response to continued refusal to testify after being ordered to do so should be carefully considered." 263 Va. at 425, 599 S.E.2d at 650 (footnote omitted). However, "[w]hen lack of memory is legitimate and refreshing of memory is not efficacious, judicial pressure to testify may result in untrustworthy testimony." Id. at 427, 599 S.E.2d at 651.

[2] This is a notable contrast to its questioning of Josh and Staton when they claimed to be unable to recall elements of what had occurred on the night of the shooting. The Commonwealth did not seek to have either of them declared unavailable.

12

authenticity of the claim, which is "a relevant factor that should have been given significant weight" in determining whether Poindexter was unavailable. Landrum, 282 Va. at 352, 717 S.E.2d at 137 (internal quotation marks omitted). The court therefore abused its discretion.

The Commonwealth argues that any error is harmless because Ellis testified that he saw Turner shoot Robinson. We disagree.

We have said that non-constitutional error may be harmless "[i]f other evidence of guilt is so overwhelming and the error [is] insignificant[] by comparison, supporting a conclusion that the error did not have a substantial effect on the verdict." Angel v. Commonwealth, 281 Va. 248, 268, 704 S.E.2d 386, 398 (2011). The only other direct evidence identifying Turner as the shooter is Ellis' statement that he saw Turner shoot Robinson after Ellis had denied it on direct examination and confirmed that he had denied it to police on the night of the shooting. This inconsistent testimony is not overwhelming evidence of Turner's guilt and we cannot conclude that Keeley's testimony, which was the result of the erroneous ruling that Poindexter was unavailable, did not have a substantial effect on the verdict. The error therefore is not harmless.

III. CONCLUSION

13

In light of our decision, we do not reach Turner's assignments of error or the Commonwealth's assignments of cross-error relating to the admissibility of Keeley's testimony. We will reverse the judgment of the Court of Appeals, vacate the convictions, and remand the case with direction to remand the same to the circuit court for a new trial consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.

JUSTICE LEMONS, concurring.

While I agree with the majority opinion that the trial court abused its discretion in ruling that Poindexter was unavailable, I believe there is another and perhaps more important reason why the judgment of the Court of Appeals should be reversed.

In its opinion, the Court of Appeals stated that:

> Neither Rule 1.6 nor 1.9 prohibits a lawyer from testifying in court regarding what occurred at a former public court proceeding when such testimony does not involve communications solely between an attorney and his client and the testimony concerns information that has become generally known. The Commonwealth only sought to elicit events and information conveyed by Poindexter at a prior public court proceeding, and did not seek to have any information disclosed that was privileged or uniquely related to Keeley's representation of Turner.

14

> Specifically, Keeley's testimony in this case did not involve any confidential information or secrets that he obtained "in the course of the representation" or "relating to the representation," Rule 1.9, nor was it "gained in the professional relationship" or if disclosed "would be embarrassing or would be likely to be detrimental to the client." Rule 1.6.

Turner v. Commonwealth, 58 Va. App. 567, 590, 712 S.E.2d 28, 39 (2011). The Court of Appeals further stated that "Keeley violated no rule of professional conduct when he testified regarding information previously publicly relayed and generally known." Id. As a result, the Court of Appeals held that "the circuit court did not err in ruling that Keeley could testify regarding Poindexter's prior sworn testimony." Id. at 591, 712 S.E.2d at 40.

In this concurrence, I will address only Rule 1.9[*] which governs conflicts of interests with former clients and provides, in relevant part, that:

> (c) A lawyer who has formerly represented a client in a matter . . . <u>shall not</u> thereafter:
>
> (1) <u>use information relating to or gained in the course of the representation to the disadvantage of the former client except</u> as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or <u>when the information has become generally known</u>; or
>
> (2) reveal information relating to the

---

[*]Rule 1.9 is modeled after the American Bar Association's Model Rules of Professional Conduct ("ABA Model Rules"). <u>Compare</u> Rule 1.9 of the Virginia Rules of Professional Conduct <u>with</u> Rule 1.9 of the ABA Model Rules.

15

representation except as Rule 1.6 or Rule 3.3
would permit or require with respect to a
client.

Rule 1.9(c) of the Virginia Rules of Professional Conduct (emphasis added). Comment 8 to Rule 1.9 explains the lawyer's duty of loyalty to a former client, and states that "[i]nformation acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client."

Turner was on trial for one count of aggravated malicious wounding in violation of Code § 18.2-51.2 and one count of use of a firearm during the commission of a felony in violation of Code § 18.2-53.1. Keeley represented Turner at his preliminary hearing; however, Shawn Overbey ("Overbey") represented Turner at trial.

At the trial, Darnell Robinson ("Robinson") testified that he was shot four times while he was standing around with several of his football teammates. Robinson also testified that he did not recall who shot him. Eric Poindexter ("Poindexter"), one of Robinson's teammates, testified that: (1) he, Josh Butler, Lamonte Williams, Donell Staton, and Robinson were in downtown Newport News; and (2) they "w[ere] just sitting on the corner talking and then [they] were about to leave and then just I seen –I just heard some shots and we all ducked around." Poindexter further testified that he did

16

not see a gun nor did he see Turner, his cousin, in downtown Newport News on the night of the shooting. Poindexter's lack of recall of any other details appears at odds with his recollection at the preliminary hearing.

Thereafter, the Commonwealth called Keeley to testify and Turner's attorney objected, stating that Keeley "still would have a duty or an obligation to Mr. Turner as his prior counsel with regards to anything that may have transpired and he would not be permitted to do anything that would be detrimental possibly to Mr. Turner." The trial court overruled the objection. Keeley testified that both Robinson and Poindexter testified at Turner's preliminary hearing. Keeley also testified that he recalled Poindexter testifying at Turner's preliminary hearing and, to the best of his knowledge, Poindexter testified that Turner shot Robinson.

Most cases interpreting Rule 1.9 involve motions to disqualify a lawyer or firm from representation. However, the exception regarding information that "has become generally known" is often the subject of analysis.

The United States District Court for the District of New Jersey has held that ABA Model "Rule 1.9(c) extends to the revelation of information obtained through the attorney client relationship to any third party to the detriment of the former client, regardless of the former attorney's relationship with

17

that third party." Pallon v. Roggio, Civ. Nos. 04-3625 (JAP), 06-1068 (FLW), 2006 U.S. Dist. LEXIS 59881, at *25 (D.N.J. Aug. 24, 2006). Moreover, ABA Model "Rule 1.9(c) is broader than the protection afforded by the duty of confidentiality and is not limited to confidential information. However, [ABA Model] Rule 1.9(c) does not apply to information that is 'generally known.' " Id. at *23 (internal citation omitted). In discussing what constitutes information that is "generally known," the court in Pallon stated:

> "Generally known" does not only mean that the information is of public record. The information must be within the basic understanding and knowledge of the public. The content of form pleadings, interrogatories and other discovery materials, as well as general litigation techniques that were widely available to the public through the internet or another source, such as continuing legal education classes, does not make that information "generally known" within the meaning of Rule 1.9(c).

Id. at *23-24 (internal citation omitted).

In Pallon, defendant Vincent Roggio ("Roggio") filed a motion to disqualify the law firm of Scarinci and Hollenbeck ("Scarinci and Hollenbeck") from representing Zachary Emmanouil ("Emmanouil"), a plaintiff in the matter. Id. at *2-3. Roggio argued that Emmanouil, his former attorney, "provided information to Scarinci and Hollenbeck that [Emmanouil] only could have obtained through his attorney client relationship

18

with Roggio."  Id. at *24.  The court noted that while the information Emmanouil provided to Scarinci and Hollenbeck may have been "within the knowledge of anyone who dealt with Roggio, [the information was] certainly not generally known." Id.

In this case, Keeley learned of Poindexter's testimony at Turner's preliminary hearing during the course of his representation of Turner.  Keeley related that Poindexter testified at the preliminary hearing that Turner shot Robinson. Such testimony was clearly to the disadvantage of Turner who was standing trial for aggravated malicious wounding of Robinson.  Although Keeley testified regarding the testimony that transpired at Turner's preliminary hearing, the information was not generally known.

While testimony in a court proceeding may become a matter of public record even in a court denominated as a "court not of record," and may have been within the knowledge of anyone at the preliminary hearing, it does not mean that such testimony is "generally known."  There is a significant difference between something being a public record and it also being "generally known."

In my view, the Court of Appeals erred in concluding that "Keeley violated no rule of professional conduct."  Turner, 58 Va. App. at 590, 712 S.E.2d at 39.  Keeley violated Rule 1.9 by

19

testifying against Turner, his former client, about information gained in the course of the representation that was to Turner's disadvantage when such information was not "generally known." The trial judge abused his discretion by permitting this testimony.